29  419
128a 470

## SIMONS *vs.* MONIER.

Where a servant, employed to work upon a farm by the month, directs his son, an infant, under his control, to do an act upon the farm, which is within the scope of the servant's employment, such act will be considered the act of the servant, and if another person sustains damage by the negligent manner in which the act was performed, the master is liable.

Where a servant, employed to work upon a farm, is directed by the master to summer fallow a particular piece of ground, the cutting and removing of the brush growing upon it is a necessary incident to the preparation of the

ground for the plow, and will be held to have been embraced in the general directions.

The rule of liability against a master for the act of his servant, is the same precisely, whether the servant is employed in the care and management of real or personal property; except, perhaps, in the single instance where the act complained of, in respect to real estate, amounts to a nuisance.

The master's liability does not extend to the negligent acts of his servant's agent or servant, unless the servant of such master has directed the particular act, or is so connected with it as to make the negligence his own, in fact as well as in law.

Where a servant employs another to do the work, generally, which it is his duty to do, and the agent, while so employed, of his own volition, and without the knowledge or direction of the servant employing him, does an act which occasions an injury to a neighbor, his act will be imputed to, and charged upon, his employer, and not upon the master.

In an action to recover for damage done to the plaintiff's land, and the wood and timber thereon, through the negligence of the defendant in setting fire to brush on his own farm, it is erroneous to ask a witness, from what he saw, how much damage the fire did to the plaintiff's farm; on the ground that it calls for an opinion from the witness on a question of damages, which belongs to the jury to determine. (SMITH, J., dissented.)

PRIOR to and on and after the 17th day of July, 1854, the plaintiff was the owner, and in the occupation and possession of a farm or tract of land lying in the town of Prattsburgh, in the county of Steuben, containing eighty-one acres of land, about 35 or 40 acres of which was improved and under cultivation, and the residue was wood land. The defendant was at the same time the owner and occupant (by his hired servant, Seth Terry, who resided upon the same) of a farm or tract of land, bounded on the south, in part, by the said farm of the plaintiff. The farm of the defendant was partly improved, and was cultivated by the defendant as a farm by the said Seth Terry, who was in the service of the defendant, hired by him to carry on the said farm, and resided in the house upon it. In the course of his farming operations, Seth Terry, in clearing up and plowing an old pasture field on the south side of the defendant, cut a large quantity of brush growing upon it, and piled it into heaps for burning, extending along the south side of the field, at the distance of

Simons *v.* Monier.

four to six rods from the woods and an old brush fence that enclosed the field on that side. The summer of the year 1854 was one of unprecedented drouth, and the woods were every where in a more combustible state than ever known before or since, and fires were running through the woods every where in that part of the country to a greater extent than had ever been known. On the 17th day of July, the woods nearest to the brush heaps above mentioned, and the old brush fence adjacent, were so dry and combustible that common prudence and ordinary care and skill forbade the burning of those heaps of brush, because, under the circumstances, it was almost inevitable that the fire would break out into the woods. At or about noon of that day, the said Seth Terry, for the purpose of clearing the field above mentioned, directed his son, John Terry, a lad then living with him and subject to his control, to set fire to the brush heaps, which he immediately did. A strong northwest wind prevailed at the time, and blew the fire directly into the brush fence and woods adjoining, so that in less than half an hour it had spread through the woods, and extended so far as to be beyond control. As soon as Terry had directed his son to set fire to the brush heaps he left him, and went to work upon another part of the farm, at a considerable distance off, without taking any precaution to prevent the fire communicating to the woods; nor did he, after it had broken out there, take any efficient means to prevent its extension. In the course of the night of the 17th of July and the day following, the fire burned over the whole of the plaintiff's woods, destroying the greatest part of the timber, and doing him damage to a large amount, notwithstanding his exertions to prevent it. This action was brought to recover for the damages thus occasioned by the act of the defendant's servants. On the trial the plaintiff recovered a verdict for $175, and from the judgment entered thereon the defendant appealed. The material facts appearing on the trial, and the ruling and charge of the judge, are referred to in the opinion of the court.

*E. B. Pottle,* for the appellant.

*Wm. Howell,* for the respondent.

JOHNSON, J. The defendant's counsel requested the judge to charge the jury that John Terry was not the servant of the defendant, but of Seth Terry, and that the defendant was in no way responsible for his acts. The judge refused so to charge, and charged in substance that the act of John Terry, in setting the fire, was the act of Seth Terry, and that, if it was negligent to set the fire at the time, and under the circumstances described by the witnesses, then the plaintiff was entitled to recover. Seth Terry was the defendant's hired servant, and worked on the farm on which the fire was set, by the month. John Terry was the son of Seth, but was not in the defendant's employ; and so far as the evidence shows, there was no legal relation whatever between John and the defendant. The setting of the fire, which the jury have found was a negligent act, was done by John at the time, by the express direction of his father. Upon this state of facts the judge, I think, was clearly right in instructing the jury that the act of setting the fire was the act of the father. It was, his immediate personal act; for although it was done by the hand of the son, the hand was directed, guided and controlled by the mind and will of the father. It was the father's will and volition exclusively. It was his carelessness, and not the carelessness of the son. It was precisely as much the act of the father as though he had used some other means or instrument in conveying the fire and kindling the flame. This being so, the defendant was clearly liable, if the setting of the fire was within the scope of the employment of Seth Terry as a hired servant upon the farm. Of this, it seems to me, upon the undisputed facts, there can be no doubt. He had been directed by the defendant to summer fallow the piece of ground where the fire was set. In order to prepare the ground for the plow, it became necessary to cut and remove the brush

growing upon it. , This preparation was an essential part of what he was required to do. It was clearly a necessary incident, and must be held to have been embraced in the general directions. It was the careless manner in which he undertook to remove the brush so cut, in respect to time and circumstances, which constitutes the alleged cause of action. It is claimed by the defendant's counsel that this question, as to whether the removal of the brush was within the scope of the employment of the servant, should have been submitted to the jury as a question of fact to be found by them. But I think it was clearly a question of law upon the undisputed facts, as to which there was no conflict of evidence, and the judge might properly have charged directly, what seems to have been assumed, that the cutting and removal of the brush was a part of the work of summer fallowing the land, and was within the scope of the employment.

It is objected that the jury were charged that the defendant would be liable, if the act was negligent, whether the act was within the scope of the servant's employment or not, as it was done by a person who worked on the premises. The charge in its commencement would seem to bear such a construction, and to lay down as a rule of law the doctrine first asserted by Rooke, J., in *Bush* v. *Steinman*, (1 *Bos. & Pull.* 404,) " that a man who has work going on upon his premises and for his own benefit, must be civilly answerable for those whom he employs; that it shall be intended by the court that he has control over those who work upon his premises, and he shall not be allowed to discharge himself from that intendment of law by any act or contract of his own." This doctrine, which strikes at the very foundation of the rule which makes the master liable only for the negligent act of the servant while engaged in the business he was employed to transact, has frequently been repeated in other cases since, by judges both in England and in this state; but no case which turned upon that question has, I think, been decided in England or here. It was, however, for a time, assumed by judges

to be the law, and a distinction was attempted to be founded upon it between persons engaged in working for another upon real estate, and those entrusted with the care and management of personal property.  The existence of such a distinction was assumed by the chancellor in *The Mayor &c. of New York* v. *Bailey,* (2 *Denio,* 433,) and by Harris, justice, in *Gardner* v. *Heartt,* (2 *Barb.* 165,) though in neither case was it necessary to sustain the decision made.  But it has since been expressly held that such a distinction, which never had any foundation whatever in reason, has none in law, and that the doctrine was never law, either in England or in this state. (*Reedie* v. *Railway Co.* 4 *Wels. Hurlst. & Gord.* 244.  *Hobbet* v. *Same, Id.* 254.  *Blake* v. *Ferris,* 1 *Seld.* 48, *and cases cited in opinion of Mullett, J.*)  These decisions establish the rule of liability against the master for the act of the servant to be the same precisely, whether the servant is employed in the care and management of real or personal property, except perhaps in the single instance where the act complained of, in respect to real estate, amounts to a nuisance.  To this extent, therefore, the charge was erroneous.  But it could, by no possibility, have prejudiced the defendant, because, as we have seen, as matter of law, the servant in setting the fire, was engaged in the business he was directed to pursue.  It was a mere abstract proposition of law, which had no bearing upon the case made by the evidence, and as no one could have been prejudiced by it, no exception will lie upon it.  There is, therefore, no error in the charge for which a new trial should be granted.  The case would, as I conceive, have stood entirely different had the son been employed by the father to do the work generally, which it was the duty of the father, as the defendant's servant, to perform, and had he, while so employed, of his own volition, and without the knowledge or direction of the father, set the fire in question.  The son, under such circumstances, being the servant of the father, and not of the defendant, his act would have been chargeable upon the father as master, and not upon the defendant.  The neg-

ligent act in that case would have been the act and negligence of the son, and in no sense that of the father, except by mere legal relation; and as the defendant never selected him, nor authorized any one to do so in his behalf, and never entrusted any business to his management and discretion, there could be no ground on which to charge the defendant with his negligent acts. The legal relation upon which the master's liability rests would in such case be entirely wanting. The master's liability does not extend to the negligent acts of his servant's agent or servant, unless the servant of such master has directed the particular act, or is so connected with it as to make the negligence his own, in fact as well as in law.

There is one ground, however, on which a new trial must unavoidably be granted. The plaintiff's counsel upon the trial asked a witness, from what he saw, how much damage the fire did to the farm. This was objected to, on the part of the defendant, on the ground that it was incompetent, as calling for an opinion from a witness on a question of damages which belonged to the jury to determine after hearing all the facts. The objection was overruled, and the defendant's counsel excepted. The witness thereupon gave his opinion that the farm had been damaged to the amount of $5 per acre. This was clearly erroneous. It was putting the witness directly in the place of the jury. (*Morehouse* v. *Mathews*, 2 *Comst.* 514. *Paige* v. *Hazard*, 5 *Hill*, 603. *Dunham* v. *Simmons*, 3 *id.* 609. *Fish* v. *Dodge*, 4 *Denio*, 311.) The order at special term refusing a new trial, must therefore be reversed, and a new trial granted, with costs to abide the event.

T. R. STRONG, J., concurred.

E. DARWIN SMITH, J., (dissenting.) I cannot concur in the decision that the question put to the witness, Jacob Williams, is objectionable. It is only when questions of this nature require or admit an answer compounded of law and

fact that they are inadmissible.   The question in this case
was not of that kind.   It simply inquired of the witness what
the extent of the damages from the fire was to the lot.   It
asked him, in effect, the extent of the depreciation in the
value of the lot, occasioned by the fire.   It was, in my opin-
ion, just as legitimate and proper in such a case to ask a wit-
ness the damages or the extent or measure of the damages
done to the lot by the fire, as to have asked him in any other
form of inquiry for the same opinion or judgment.   It was
merely asking his opinion of the value of the property after
the fire ;  he and other witnesses having given their opinion of
its value before.   The word *damages* is merely equivalent, in
force and signification, with the word *injury*.   There is no
inherent mischief or illegality in the word *damages*, or error
or wrong in its use in such a sense.   It was used here in its
ordinary common acceptation, and not in any artificial or
technical sense.   And the answer to it shows that it was so
understood, and that improper evidence was not obtained by
it from the witness, if such evidence was called for, or might
have been given, in response to the question.   The question
put to the witness, in this case, was, " From what you saw,
how much damage did the fire do to the *farm ?*"   In the case
of *The Rochester and Syracuse Rail Road Co.* v. *Budlong,*
(10 *How.* 294,) which was a general term decision in this dis-
trict, Judge Selden said : " If the question was, ' what is the
amount of the damage or injury to the *horses* arising from the
defect ?' the question would be proper.   It would be absurd,"
he says, " to exclude this question, as calling for an opinion
as to the damages, and not as to value.   The difference is
merely verbal."   So, also, the same judge, in *Dewitt* v. *Bar-
ly,* (17 *N. Y. R.* 345,) speaking of the case of *Morehouse*
v. *Mathews,* (2 *Comst.* 514,) says : " Had the inquiry in that
case been, ' what was the damage or injury to the *cattle* in
consequence ?' &c., it would have been unobjectionable."   The
question of damages in many cases depends upon the difference
in value between property in one state and its condition in

another. That was this case; but evidence of *opinion* in respect to value, is not to be extended for that reason. When the question in its form does not embrace an inquiry as to the *legal rule of damages*, it is admissible and proper. (17 *New York Rep.* 344.) Such was not the case here.

The case of *The Rochester and Syracuse Rail Road Co.* v. *Budlong,* (*supra,*) was before me at the circuit, and the question objected to under consideration, was allowed on the authority of that case. I think that case was rightly decided, and I cannot concur in overturning it.

New trial granted.