## N. Y. COMMON PLEAS.

JAMES EDWARDS, plaintiff and appellant, agt. LYMAN N.
JONES, defendant and respondent.

*Master and servant— When master liable for injury by acts of servant —
Negligence.*

If the servant, within the scope of his duty, enables another by his assent
to injure a third person, the master is liable, but when there is no evi-
dence of such assent there is no cause of action against the master.
Assent in such case will not ordinarily be inferred.

*General Term, May,* 1884.

*Before* DALY, *C. J.,* BEACH *and* LARREMORE, *JJ.*

THE plaintiff sued in the late marine court to recover $150
damages for injuries said to have been done to his canal boat
by the negligence of the defendant.

The complaint, in setting out the cause of action, alleges
"that on or about the 14th day of February, 1882, the plain-
tiff arrived at the coal yard of the defendant at One Hundred
and Twentieth street, East river, with his said canal boat and
a cargo of coal, consigned to said defendant. That thereupon,
the defendant, his agents, servants and employes commenced
to discharge the said cargo of coal from the said canal boat
into the said defendant's yard." That on the 16th of Feb-
ruary, 1882, while unloading said cargo, the coal bucket, by
means of which the coal was being removed, fell violently
upon the plaintiff's boat, doing the damage claimed. The
plaintiff then charges that the bucket fell through the negli-
gence of the defendant and his employes, and not by or
through any fault on the part of the plaintiff or his employes.

The answer is, in substance, a denial of each and every
allegation in the complaint contained, excepting that the cargo of
coal was received by the defendant and that he proceeded to
unload the same into his yard. The action was tried Novem-

ber 9, 1882, before Mr. justice McADAM and a jury. It
appeared by the evidence that the defendant employed a per-
son by the name of Scott to assist the plaintiff's servants in
unloading the boat and that defendant was to pay Scott for
such services "so much a ton." Scott proceeded to assist the
plaintiff's servants, and during the progress of the unloading
Scott left a horse which he had been previously driving in the
unloading, and went to the water closet and was absent about
ten or fifteen minutes; and after Scott left and while he was
absent a strange man, who was not known to any of the par-
ties or witnesses and who was not working there, came and
took hold of the horse and, under orders from the plaintiff's
servant, started the horse and thereafter lifted a spring and
caused the tub to fall which produced the injury. At the
conclusion of the trial the justice dismissed the complaint,
writing the following opinion:

McADAM, J.— The person guilty of the negligent act
which injured the plaintiff's boat was not the servant of the
defendant, but a volunteer, who, without the defendant's
knowledge, undertook to take charge of the horse during the
servant's temporary absence. If the volunteer had merely
assumed charge of the horse no damage would have ensued.
But the volunteer went further; he drove the horse and
touched the spring which caused the damage. The defend-
ant not having selected the volunteer, is not answerable for his
competency or misconduct. In *Booth* agt. *Mister* (7 *Car.*
*& P.*, 66) the defendant's servant allowed a stranger to drive
the horse, and the court said: "As the defendant's servant
was in the cart, I think that the reins being held by another
man makes no difference. It was the same as if the servant
held them himself." In *Althorf* agt. *Wolfe* (22 *N. Y.*, 352)
the servant and volunteer were both present when the damage
was done, and the court, following the case last cited, held
that the master was liable. In *Simons* agt. *Miller* (29 *Barb.*,
420) the servant was employed to do a specific act, and the

master was held liable for the negligence of the servant's son, who acted by the servant's direction in performing it. The court was careful, however, not to extend the rule further than the necessities of that case required, and said : " The case would have stood entirely different had the son been employed by the father to do the work generally, which it was the duty of the father, as the defendant's servant, to perform, and had he while so employed, of his own volition, and without the knowledge or direction of the father, set the fire in question. The son, under such circumstances, being the servant of the father, and not of the defendant, his act would have been chargeable upon the father as master, and not upon the defendant. The negligent act in that case would have been the act and negligence of the son, and in no sense that of the father, except by mere legal relation ; and as the defendant never selected him, nor authorized any one to do so on his behalf, and never intrusted any business to his management or discretion, there could be no ground on which to charge the defendant with his negligent acts. The court assigns as a reason for this, that "the legal relation upon which the master's liability rests would in such case be entirely wanting." It is noticeably wanting in this case.. The master selected his servant and intrusted the work to him presumably on account of his experience. The volunteer who took charge of the horse during the servant's temporary absence undertook to experiment with him, and made the mistake which the servant's experience would undoubtedly have prevented had he been present. The plaintiff's servant assisted in the experiment and is culpable, to a limited extent at least. The evidence failed to show that the defendant did anything which, under the circumstances, he ought not to have done, or omitted any precaution which a prudent and careful man would or ought to have taken, observed or performed. There was no solid legal ground for holding the defendant liable, and the complaint was properly dismissed.

From the judgment entered upon this dismissal the plain-

tiff appealed to the general term of that court, which, on
May 22, 1883, affirmed the judgment; and from the judg-
ment entered on that affirmance the plaintiff appealed to the
general term of the court of common pleas for the city and
county of New York.

*J. A. Hyland,* for plaintiff and appellant:

I. Defendant is liable for the damages occasioned by the
happening of the accident (*Wood's Master and Servant, sec.*
308; *Suydam agt. Moore,* 8 *Barb.,* 358; *Simons agt. Monier,*
29 *Barb.,* 419; *Booth agt. Mister,* 7 *Carrington & Payne,*
66; *Althorp agt. Wolfe,* 22 *N. Y.,* 355; *Gleason agt. Ams-
dell,* 9 *Daly,* 393; *Sherman & Redfield on Negligence, secs.*
70, 71; *Lyons agt. Rosenthal,* 11 *Hun,* 46; *Mullen agt. St.
John et al.,* 57 *N. Y.,* 567).

II. There was a duty imposed upon the defendant which
rendered it imperative that he properly discharge the plaintiff's
boat. Where by contract or by statute the master is bound
to do certain things, if he intrusts that duty to another he
becomes absolutely responsible for the manner in which the
duty is performed, and that without any reference to the ques-
tion whether the servant was authorized to do the particular
act (*Wood on Master and Servant, sec.* 321).

III. It was error to refuse to allow the case to go to the
jury. The accident raised a presumption of negligence on
the part of the defendant, for which he is liable (57 *N. Y.,* 567;
11 *Hun,* 46; *Sherman & Redfield on Negligence, sec.* 71). In
determining the propriety of a nonsuit, the court is legally
bound to assume the truth of the fact which the testimony of
the plaintiff legitimately conduces to prove, although their
correctness may be controverted by the defendant's witnesses
(64 *How. Pr. R.,* 126).

*James Wiley,* for defendant and respondent; *Amour C.
Anderson,* of counsel:

I. The plaintiff and defendant were both absent at the time

of the accident. In order to establish a liability against the defendant, it therefore became necessary for the plaintiff to make it appear, 1st. That some *employe* of the defendant committed the negligent act. 2d. That the plaintiff's employe, who assisted in the act, was entirely free from fault. The same rule of law which makes the defendant responsible for the acts of his employe, applies with equal force to plaintiff in respect to his employers (*Wharton on Negligence*, secs. 157, 158).

II. The rule which makes one person responsible for the acts of another is founded on the maxim *qui facit per alium, facit per se,* and is based on the theory of agency, but neither the principle of the rule nor the rule itself, can apply to a case where the party sought to be charged does not stand in the character of employer to the party by whose negligent act the injury has been occasioned (*Wharton on Negligence, sec.* 157, *and cases cited*). In cases like the present one the *onus propandi* is on the plaintiff to make out his case by clear, clean, affirmative evidence. His case is not to be presumed, but must be proved (*Baulec* agt. *The N. Y. and H. R. R. Co.,* 59 *N. Y.,* 366; *Fleming* agt. *Northampton Nat. Bank,* 62 *How.,* 178; *Paine* agt. *Forty-second Street R. R. Co.,* 40 *N. Y. Supr. Ct. R.,* 8; *Boniface* agt. *Relyea,* 36 *How.,* 457; *Stevens* agt. *Armstrong,* 6 *N. Y.,* 435; *Kunz* agt. *Stewart,* 1 *Daly,* 431). The rule is, that where the circumstances admit of two inferences, either of which is equally probable, one in favor of plaintiff and the other in favor of the defendant, plaintiff should be non-suited (*Cordell* agt. *N. Y. C. and H. R. R. R. Co.,* 75 *N. Y.,* 330–332; *Kenny* agt. *N. Y., M. B. R. R. Co.,* 13 *Week. Dig.,* 61; *Claflin et al.* agt. *Meyer,* 75 *N. Y.,* 260; *Sheldon* agt. *The H. R. R. R. Company,* 49 *Barb.,* 226; *Lehman* agt. *The City of B.,* 49 *Barb.,* 234; *Baulec* agt. *The N. Y. and H. R. R. Co.,* 59 *N. Y.,* 366). The cases cited and relied upon by the appellants (*Suydam* agt. *Moore et al.,* 8 *Barb.,* 359; *Simons* agt. *Monier,* 29 *Barb.,* 419; *Booth* agt. *Mister,* 9 *Car. &*

*Payne*, 66; *Althorf* agt. *Wolfe*, 22 *N. Y.*, 355; *Gleason* agt. *Amsdell*, 9 *Daly*, 393) are not parallel cases and do not help the appellant. If, as judge McADAM says, Scott and the strange hand had both been present, one assisting the other, the defendant might have been held, because the principal in that event would have had the benefit of his agent's skill and care. But where, as in this case, the agent or servant was absent, he could not delegate his authority by substituting a new agent in his place and stead (*Story on Agency*, secs. 13, 14; *Ewell's Evans' Agency*, 51). The maxim is *delegata protestas non potest delegari*. Scott was an "independent contractor;" and the employment being a lawful one, which might have been performed without injury to others, the person employing the contractor is not responsible for the acts of the latter, nor for those acting under his orders (*See Wood on Master and Servant*, sec. 314, *and notes; Kelly* agt. *The Mayor et al.*, 11 *N. Y.*, 432; *After new trial*, 4 *E. D. Smith*, 291; *McCafferty* agt. *The S. D. and P. M. R. R. Co.*, 61 *N. Y.*, 178; *Burgmeister* agt. *The N. Y. and E. R. Co.*, 12 *Weekly Dig.*, 208; *King* agt. *N. Y. C. and H. R. R. R. Co.*, 66 *N. Y.*, 181; *Town of P.* agt. *Loveless*, 72 *N. Y.*, 211; *Scanlon* agt. *Carroll*, 1 *City Court R.*, 351).

BEACH, *J.* — The difficulty with the plaintiff's case, causing a dismissal of his complaint by the learned justice of the city court presiding at trial term, did not arise from weakness in legal position, but for want of sufficient evidence to make a *prima facie* case upon the facts.

The plaintiff was bound to produce proof authorizing the jury to find that the person in charge of the defendant's hoisting apparatus sustained a relation to the defendant which would not make the defendant responsible for his negligence. If he failed in this there could be no question for the jury. The evidence upon this point was given by the witness Bray and is brief enough for quotation. He says: "The regular driver went away to the water closet and left a strange hand

at it; the strange man let it go before he was told, and the tub fell and it came right down on the boat." On cross-examination he testifies: "He (the defendant's driver) left it (the horse) and then a strange man took hold." Again: "Q. And while he was gone this strange man came and took hold of the horse and lifted the spring and started it and then the tub came down? A. Yes, sir."

The testimony does not show the stranger assumed control with the knowledge or assent of the defendant's servant. One part would support such a conclusion, another is equally strong in favor of the defendant's servants having been ignorant of the stranger's act. In the one case the defendant would have been liable for the stranger's negligence, he having been left in charge by defendant's servant (*Simons* agt. *Monier*, 29 *Barb.*, 419; *Althorf* agt. *Wolf*, 22 *N. Y.*, 385; *Gleason* agt. *Amsdell*, 9 *Daly*, 393). If the servant, within the scope of his duty, enabled another by his assent to injure a third party, the master is liable. In the other view, *i. e.*, that the stranger took control of the hoisting apparatus without the knowledge or assent of the regular driver, the defendant would not be liable, the stranger being an intruder or volunteer. This distinction, in my opinion, is clearly deducible from the authorities cited. The plaintiff failed to give evidence authorizing a finding that the strange man took charge with the driver's knowledge. The proof was quite as potent in support of the driver's ignorance. For this reason it was right to dismiss the complaint.

The judgment should be affirmed, with costs and disbursements.

DALY, C. J., and LARREMORE, J., concur.