JESSE JAMES, by next Friend, Respondent, v. GEORGE MUEHLEBACH *et al.*, Appellants.

### Kansas City Court of Appeals, March 4, 1889.

Master and Servant : MASTER'S LIABILITY FOR ACTS OF THIRD PERSON ASSISTING SERVANT. V., the driver of defendant's beer wagon, at the request of E. an acquaintance, took him upon his wagon, then loaded with empty beer barrels, which began to fall off into the street, when the wagon was stopped close up to the side-walk of the house where plaintiff resided with his mother, and where in readjusting the load a number of the kegs were thrown off, one of them striking and injuring plaintiff. The evident tendency of the evidence went to establish that the barrel which struck plaintiff was thrown by E. *Held*—

(1) That E. was not the servant of the defendants, and they can only be held liable in this case through the acts of the driver.

(2) If the driver himself negligently threw the barrel, the case is at once settled against defendants ; but, if E. threw it, it must appear that he was directed or requested to do so by the driver.

(3) Such directions or request need not, necessarily, be by express words directed to E. by the driver, but the act must be shown to have been done for the driver and with his assent and by reason of his wish or desire.

(4) That the instructions, set out in effect in the opinion, submitted the case to the iury in consonance with the above principles.

*Appeal from the Jackson Circuit Court.*—Hon. Turner A. Gill, Judge.

Affirmed.

*Milton Campbell,* for appellants.

(1) It was error to give the instructions asked by plaintiff. For there is no evidence that "the smaller man," who "dismounted from the wagon" "to readjust the load," "and who threw one of the kegs onto the sidewalk and against plaintiff," was defendant's servant in the management of that team and wagon. *Douglas v. Stephens,* 18 Mo. 363; *Paint & Color Co. v. Canton,* 92 Mo. 229; Wood on Master and Servant, secs. 306, 281, 304; 2 Thomp. on Neg. 899, sec. 21, and cases; Whart. on Neg., secs. 162-188; Cooley on Torts (1879) secs. 534, 535; *Garretzen v. Duenckel,* 50 Mo. 104; *Sherman v. Railroad,* 72 Mo. 65. The affirmative evidence is all to the contrary, and this court reverses if instructions are not based on evidence. *Fellows v. Wise,* 55 Mo. 413; *Fike v. Clark,* 55 Mo. 105; *Wells v. Halpin,* 59 Mo. 92; *Parker v. Marquis,* 64 Mo. 38; *Cooper v. Ord,* 60 Mo. 420; *Chubbuck v. Railroad,* 77 Mo. 591. Nor can this instruction be justified by alleging that Vogel, the real and only servant, threw off some kegs, "and may have thrown the keg" that hurt plaintiff, since the petition counts only on the injury done by the man who "dismounted from the wagon," and all the evidence shows that Ehrhard did it. (2)

The court erred in not setting aside the verdict. The finding, the court admits, was contrary to instructions given, including even the one above excepted to by defendants. R. S., sec. 3704. And this is the very "error of law" which authorizes a court to grant a second new trial. *Hill v. Wilkins*, 4 Mo. 86; *Dickey v. Malachi*, 6 Mo. 177; *Hill v. Deaver*, 7 Mo. 58. And there was no evidence that Ehrhard was Muehlebach's servant in the management of that team and wagon, and no evidence that any other person than Ehrhard did the damage. This is that cogent evidence on which the supreme court reverses. *Whitsett v Ranson*, 79 Mo. 258; *Spohn v. Railroad*, 87 Mo. 74; *Garrett v. Greennell*, 92 Mo. 120. And having admitted and found that the jury did not obey or follow the given law, the court has no right to say, or to imply, that they obeyed, or followed an instruction they never heard of. To permit this is to permit a reversal of the functions of court and jury, the jury to give the law and the court to fit the facts around the law so given. Const. Mo., sec. 28. I submit that it is not lawful for the court to abdicate in favor of the jury nor to usurp the jury's functions, and that this is the question for decision. R. S., sec. 3600; R. S., sec. 3601.

*Crittenden, McDougal & Stiles* and *J. W. Henry*, for respondent.

(1) We insist that, if appellant seeks to reverse the judgment because there was no evidence to warrant the verdict, the entire testimony should have been embodied in the abstract. Will this court act upon the inference drawn from the testimony by appellant's attorney? (2) Our next point is that, even if the court will treat the paper filed by appellant as an abstract and accept his inferences and conclusions from the testimony

as correct, still the court committed no error in overruling defendant's motion for a new trial. The instructions asked by plaintiff, and refused by the court, should have been given, and, if given, the verdict would necessarily have been for the plaintiff, whether Vogel or Ehrhard threw the kegs which struck Jesse James. If that instruction should have been given, and, even on defendants' statement of the case and inferences from the testimony, it is manifest that the verdict should have been for plaintiff on the law and the evidence, then the circuit court committed no error in overruling the motion. That that instruction should have been given., Cooley on Torts, pp. 532,533 ; *Hill v. Morey*, 26 Vt. 178 ; Wood's Master and Servant, sec. 308, p. 579 ; Wait's Actions and Defences, 413 ; *Althorf v. Wolfe*, 22 N. Y. 355 ; *Booth v. Mister*, 7 Carr, 66. The authorities cited by us clearly support the proposition submitted in plaintiff's refused instruction. Wood states the doctrine thus broadly : " If the servant employs another person to do his work or assist him therein, the master is liable for an injury resulting from such person's act." Wood Master and Servant, sec. 308.

ELLISON, J.—This action is for personal injuries to plaintiff charged to have resulted from the negligence of defendants' servants.

Defendants operate and conduct a brewery in Kansas City and had in their employ a servant, as a driver of one of their beer wagons. On Sunday, the day of the accident, without defendants' knowledge, he took an acquaintance upon the wagon with him at the request of the acquaintance, who merely wanted a ride.

This acquaintance was also an employe of defendants but in an altogether different department. The wagon was loaded with empty beer barrels which began to fall off into the street, when the wagon was stopped close up to the side-walk, in front of the house where

plaintiff resided with his mother. In readjusting the load a number of kegs were thrown off, one of them striking and injuring plaintiff. The evident tendency of the evidence, as is stated by the trial court, went to establish, that the barrel which struck plaintiff was thrown by the man accompanying the driver. And the theory upon which the verdict against defendants was permitted to stand was, that they were liable notwithstanding the barrel was not· thrown by the driver if he requested his friend to throw off the load. In cases of this nature the test is to ascertain the relation between the party charged and the party actually committing the injury. Unless the relation of master and servant exists between them, the act of the one creates no liability on the other. The man Ehrhard was not the servant of defendants ; they had not employed him, or authorized his employment, nor did they know of his presence with their driver. The fact that he was in their employ in a wholly distinct branch of their business we leave out of the consideration as having no bearing on the case. If he was defendants' servant it was through an implied authority in the driver to hire him.

To say authority exists in a teamster to hire other servants for his master would be an unreasonable and extreme statement ; it would imply, also the right, too, to fix compensation and discharge servants, in other words, would make of him a vice-principal. Whether a servant, however inferior, would have authority in a sudden emergency to hire assistance in order to save the property of which he is in charge, or prevent its doing some impending harm, is not necessary here to consider, as such question does not arise in this case.

In *Randleson v. Murray*, 8 Ad. & El. 109, a warehouseman employed a master porter to remove a barrel of flour from his warehouse. The porter used his own tackle and employed men in the removal. It was held

that the warehouseman was liable for an injury result-
ing from inefficient tackle and negligence of the men
and by one of the judges that the men so employed by
the porter were the servants of the warehouseman.
This case has been frequently referred to in cases of
contractors, subcontractors and their principals, and
sustained, *arguendo*, in the cases of *Quarman v.
Burnett*, 6 M. & W. 499, and *Rapson v. Cubitt*, 9 M. &
W. 710, on the ground that the injury occurred on the
warehouseman's premises and in and about his "fixed
property;" a distinction, the existence of which, may
well be questioned.

The principal authority relied upon by the plaintiff
in this case, is that of *Althorf v. Wolfe*, 22 N. Y. 355,
where the master directed his servant to remove snow
and ice from the roof of his residence. The servant
without the actual knowledge of the master asked a
friend to go with him to the roof, the friend did so and
volunteered to assist in throwing off the snow and ice
into the street below. The master was held liable for
an injury resulting in the death of a passenger in the
street, though the ice inflicting the injury may have
been thrown by the volunteer and not the servant. The
ground upon which this decision was put by the two
judges delivering opinions therein makes it wholly inap-
plicable to this case. It is put by WRIGHT, J., upon
the ground that the work was done on defendant's fixed
property, *i. e.*, his house, into which the servant's friend
was admitted with the knowledge and consent of the
master's wife and family.

The upshot of the opinion by WRIGHT, J., is, that
the volunteer was admitted into defendant's house and
onto the roof to assist the servant, with the knowledge
and assent of those in charge of the premises for defend-
ant and that it was therefore defendant's knowledge
and assent.

DENIO, J., rests the case on the ground that the
defendant had the control of his house and premises and

was responsible for their conduct and management, and was bound to see that his necessary affairs were carried on, in and about them so that others would not receive injury. He quotes from the Year Book, 2 H. IV., that, "I shall answer to my neighbor for him who enters my house with my leave, or without my knowledge, or who is a guest with me, or with my servant, if he, or any of them, does anything, as with a candle or other thing, by which doing the house of my neighbor is burned."

The result of that case is, that while the facts are in many respects applicable to the case at bar, the ground, upon which the decision has been put, does not aid us in the solution of the present question. The same result might, perhaps, have been reached in that case for a different reason. The act of the volunteer was substantially the act of the servant, for he was immediately present, standing by and directed that the ice be thrown into the street; it was as much his act as if done by his own hand. If a servant in charge of his master's carriage should take a stranger with him into the driver's seat, hand him the reins and tell him to drive at a run and an injury happen in consequence of the speed, the master must answer for the damage, for the negligence was that of his servant.

But not so if the servant had quit the carriage and substituted the stranger in charge, generally, in his stead, without the knowledge of the master.

For if an injury happen it is not the act of the servant for whom only is the master liable. In *Booth v. Mister*, 7 Carr & P. 66, a servant in charge of his master's cart gave over the reins to one in the cart with him, an injury happening in consequence of the negligent driving, the master was made to respond.

Lord ABINGER said, "As the defendant's servant was in the cart, I think that the reins being held by another man makes no difference. It was the same as if the servant had held them himself."

In *Simons v. Monier*, 29 Barb. 419, defendant's servant was hired by him to carry on his farm and resided thereon.

An injury happening from a fire that was negligently set by the servant's son, but who, himself, had no relation with the master, the master was held liable on the ground that the servant was present and expressly directed the son to set the fire. It was precisely as much the act of the father as though he had used some other means or instrument in conveying the fire and kindling the flame."

In the case of *Bush v. Steinman*, 4 Bos. & Pul. 404, decided in 1799, the principal case asserting the "fixed property" rule, which has since been overruled in England and quite generally repudiated in this country, there occurs, incidentally, a statement that, "a master having employed his servant to do some act, the servant out of idleness employed another to do it, and that person in carrying into execution the orders which had been given to the servant committed an injury to the plaintiff, for which the master was held liable." Assuming the employment was made by the servant without the master's knowledge, that statement is much too broad, for if the party employed goes independently and separately about the service to be performed, he is but the servant of the servant and not of the master. It is but a step from that statement to say that a servant may become the master's *alter ego*, regardless of the object or the nature of his service.

Our conclusion is that Ehrhard was not the servant of the defendants and if they are to be held liable in this case it must be through the act of the driver.

If, therefore, the driver himself negligently threw the barrel the case is settled at once against defendants; but if Ehrhard threw it, it must appear that he was directed or requested to do so by the driver. Such direction or request need not, necessarily, be by express

words directed to Ehrhard by the driver, but the act must be shown to have been done for the driver and with his assent and by reason of his wish or desire.

The foregoing answers the points and suggestions offered in the briefs and arguments in the cause and the only question remaining is, whether the instructions submitted the case to the jury in consonance with the view we have taken. Plaintiff's instruction merely submitted the question of whether the act was done by the servant of defendants. But the defendants asked and had given an instruction declaring that if "(the driver) Vogel did not directly or indirectly throw, or order to be thrown, the beer keg that injured plaintiff, but said John G. Ehrhard did, of his own will and accord, without employment or direction from any one, throw said keg against plaintiff, and thereby cause the injury complained of, then plaintiff cannot recover in this suit, and your verdict must be for defendants."

The instructions, when taken together, show that the question was submitted to the jury whether the driver himself threw the kegs, or whether they were thrown by Ehrhard by the direction, or with the assent, of the driver.

This under the evidence in the cause which clearly tends to show the driver to have been present and that Ehrhard threw off the kegs for him, under his immediate supervision and in accordance with his wish and desire, was sufficient.

We do not deem the objection to the petition to be well founded. Strong objection is made to the reasons given by the trial court for overruling the motion for new trial, but as the motion was properly overruled, we will not, in a case of this kind, examine into the reasons which may have brought the court to a correct conclusion.

With the concurrence of SMITH, P. J., the judgment is affirmed. GILL, J., not sitting.