(52 App. Div. 182.)

## TOWN OF HEMPSTEAD v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. June 5, 1900.)

1. WATERS AND WATER COURSES—DIVERSION—RETROACTIVE STATUTE.

Acts 1898, c. 469, § 1, provides that when a municipal corporation diverts waters from a fresh-water stream, outside the limits of an incorporated city, flowing into a tide-water creek or estuary, which before such diversion was navigable for vessels of 20 or more tons burden, the corporation diverting such water shall keep the tide-water creek or estuary deepened to the depth of at least three feet at low-water mark from its mouth to the head of tide water, for the full natural width of the creek, and maintain such navigable depth at all times. Under Laws 1888, c. 583, the city of Brooklyn, succeeding a former water company, in 1890 constructed structures diverting water from two brooks which otherwise would have flowed into a creek navigable before diversion. Defendant city, by Greater New York Charter, succeeded to the rights of Brooklyn. Since 1890 nothing further has been done to cause diversion. *Held*, in an action to compel restoration, that the statute was not intended to have a retroactive effect, compelling restoration of navigability, but related to future means of diversion, and was designed to protect a condition of navigation existing at the time of its passage.

2. SAME—PENALTY FOR DIVERSION—RESTORATION TO FORMER CONDITION.

Acts 1898, c. 469, § 2, declares that a municipal corporation diverting such water shall within 15 days after notice restore the navigable stream to the depth as specified, under penalty of $50 per day prescribed in section 6 for each day such diversion continued after expiration of the 15-days notice. Under Laws 1886, c. 538, to supply the city with water the city of Brooklyn diverted the water of two brooks which otherwise would flow into a navigable creek. Under Greater New York charter, defendant succeeded to the rights of the city of Brooklyn, and the diversion was continued. In an action against defendant for penalties for the diversion, plaintiff conceded that the creek had not, from its mouth to the head of tide water, the depth of three feet at low-water mark prior to 1890, and the depth did not exist when the act became a law. *Held*, that the statute did not require the city, if it decreased the navigability of a tide-water stream by some new means, to create a depth of three feet, if it did not exist at the passage of the act, but only to restore the depth actually existing at such time.

Appeal from judgment on report of referee.

Action by the town of Hempstead against the city of New York to recover penalties for diversion of water from a fresh-water stream flowing into a tide-water creek. From a judgment in favor of plaintiff on report of the referee, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HIRSCH-BERG, and JENKS, JJ.

William J. Carr (Luke D. Stapleton, on the brief), for appellant.
George Wallace, for respondent.

GOODRICH, P. J. An act became a law on April 22, 1898 (chapter 469), entitled "An act to protect navigation in certain tide waters within the state of New York," the first section of which reads as follows:

"Section 1. Whenever a municipal corporation shall divert or cause to be diverted the water, or a portion thereof, of a fresh water stream or streams outside the limits of an incorporated city flowing into a tidewater creek or estuary which tidewater creek or estuary before such diversion was navigable for vessels of twenty or more tons burthen, it shall be the duty of the corpora-

tion so diverting or causing to be diverted such stream or streams of fresh water to keep said navigable tidewater creek or estuary deepened to the depth of at least three feet at low water mark from its mouth to the head of tidewater for the full natural width of said creek, and to maintain such navigable depth of water at all times."

The second section provides that the officials of any town wherein the tide-water creek or estuary is located may serve notice on the municipal corporation—

"So diverting water from the stream of fresh water, * * * of the fact of such tidewater creek or estuary not being maintained at the depth and width herein provided for, and the said municipal corporation shall within fifteen days thereafter, by dredging or otherwise, restore such navigable stream to the depth as specified by this act; and it shall not be lawful for such corporation to continue the diversion of any such fresh water stream after said fifteen days have expired from the time of serving such notice, until the tidewater creek or estuary into which any such stream flows shall have been deepened to the required depth and width."

Section 4 provides that at the expiration of said fifteen days application may be made—

"To the supreme court for an injunction restraining said municipal corporation from diverting any fresh water from the stream or streams above until such tidewater creek or estuary shall have been put into the proper condition as to depth and width herein provided for."

Section 6 reads:

"Any corporation or individual continuing to divert water from such fresh water stream without maintaining the navigable depth of the tidewater creek or estuary into which it flows, as herein provided for, shall be liable to a penalty of fifty dollars per day for each and every day such diversion is continued, computing from the expiration of fifteen days after notice is given as provided in section two, which penalty may be sued for and recovered by such supervisor or village president in the name of the town or village in which such tidewater creek is so located, and the amount recovered shall be paid into the treasury of such town or village."

This action was brought to recover the penalties, provided by said act, accruing between July 27 and November 22, 1898. It was referred to John R. Reid, Esq., who reported in favor of the plaintiff, and the defendant appeals from the judgment entered thereon.

The referee found, as matter of fact, that the defendant had diverted or caused to be diverted a portion of the water of East Meadow brook and Freeport brook; that such diversion of the water, or a portion thereof, occurred after the passage of the act, and continued up to November 22, 1898; that said brooks were fresh-water streams flowing naturally into the Freeport creek, which is a tide-water creek or estuary, and before such diversion was navigable for vessels of 20 or more tons burden; that notice of such diversion, in accordance with the act, was on July 12th duly served on the mayor of the defendant; and that from the time of such service, up to November 22d, Freeport creek was not maintained at the depth of at least three feet at low-water mark, from its mouth to the head of tide water, for the natural width of said creek. The plaintiff's contention, briefly stated, is that it was necessary only to prove that the city, after the passage of the act, by structures in use before such act, continued to divert from fresh-water streams waters which oth-

erwise would have flowed into Freeport creek; that said creek at any time before such diversion was navigable for vessels of 20 or more tons burden; that notice thereof was served on the defendant; and that the creek within 15 days thereafter was not, by dredging or otherwise, put into and maintained at the depth of at least three feet at low water from its mouth to the head of tide water, and for the full natural width of said creek. The defendant contends that the action is not within the scope of the act, which relates to future means of diversion, and was designed to protect or conserve some condition of navigation existing at the time of its passage, and not to restore such navigability as might have existed previously. This brings us to a more detailed statement of facts not fully found by the referee.

The Nassau Water Company was incorporated by chapter 333 of the Laws of 1855, which provided that, for the purpose of supplying the city of Brooklyn with water, the company, upon making compensation therefor, either by voluntary arrangement or by condemnation proceedings, might enter upon lands and take water from any streams or other sources, and divert and convey the same to said city; laying conduits or other works or machinery necessary for that purpose. In 1858 this company commenced proceedings to condemn lands and ponds in the town of Hempstead, in which commissioners awarded to the town certain damages "for the use and right of the water and streams running to and proposed to be diverted by said works, as shown by maps. * * *" It was conceded at the trial that the proceedings related to the fresh-water brooks in question in these condemnation proceedings. The city of Brooklyn succeeded to the rights of the Nassau Water Company, under chapter 22, Laws 1857, and the city of New York to the rights of Brooklyn, under the Greater New York charter. By its charter (chapter 583, Laws 1888) the city of Brooklyn was authorized, for the purpose of extending the waterworks, to take water from any streams or other sources, and to divert and convey the same to the city, and to lay and construct pipes, conduits, or other machinery necessary or proper therefor, and to take proceedings for the condemnation of such land or water. Under this act the city constructed pipes, conduits, and other structures by which water from the two brooks was conducted to the city. There is no evidence to show that any act has been done by either municipality to change the condition of the water diversion since the construction of the conduit in 1890. The plaintiff also conceded that Freeport creek had not three feet of water at low water, from its mouth to the head of tide water, prior to 1890, when the defendant's conduit by which the plaintiff claims that the fresh waters are diverted was constructed.

In construing this statute, we must seek the intention of the legislature. From previous statutes, we may assume that the legislature was generally familiar with the fact that much of the water supply of the city of Brooklyn was taken from the locality in question through conduits, canals, and other extensive structures which had been in existence for many years, and that this supply was decreasing the natural flow of fresh water in that vicinity. The lia-

bility of the city for damages occasioned thereby to property owners had been the subject of litigation, as in Smith v. City of Brooklyn, 18 App. Div. 340, 46 N. Y. Supp. 141, affirmed in 160 N. Y. 357, 54 N. E. 787, and numerous other cases. It can hardly be supposed that the legislature intended to compel the city to discontinue these means of water supply, but it is possible to construe the act so as to hold that it was intended to compel the city to make compensation for future damages to landowners resulting from its continued diversion of water. This becomes of importance, as bearing upon the question whether the statute is retroactive. There is no doubt that the state, acting through the legislature, has control over navigable waters within its territory, but it is equally clear that a penalty cannot be inflicted for a legal act done before the passage of the act. A statute is to be construed as operating prospectively only, unless on its face a contrary intention is manifested beyond reasonable doubt. Shreveport v. Cole, 129 U. S. 36, 9 Sup. Ct. 210, 32 L. Ed. 589. In Railroad Co. v. Van Horn, 57 N. Y. 473, 477, the court said:

"It is always to be presumed that a law was intended, as is its legitimate office, to furnish a rule of future action, to be applied to cases arising subsequent to its enactment. A law is never to have retroactive effect unless its express letter or clearly manifested intention requires that it should have such effect. If all its language can be satisfied by giving it prospective operation, it should have such operation only."

Did the legislature intend to impose upon the city the duty of restoring in the creek a condition of navigability which may have existed long before the passage of the act, or did it intend only to provide against some new act of the city which should change established conditions? For the purpose of deciding the question, we may first refer to the title of the act. People v. Davenport, 91 N. Y. 574; People v. England, 16 App. Div. 97, 45 N. Y. Supp. 12. The title uses the words "protect navigation." This indicates that the act was intended to refer to conditions of navigation existing at the time of the enactment only. The use of the future tense in the first section, "shall divert or cause to be diverted," and "before such diversion," indicates that the statute was intended to relate to some future act of the city. It is true that the statute speaks of "continuing the diversion" and "continuing to divert water," but this relates to the diversion just referred to; that is, a future diversion. The question is, does this statute relate to the continuance of the use of methods and means already in use and operation, or only to the employment of new methods and new operations? Can it be held that when, without any change, the city continues to use its appliances as they legally existed at the time of the passage of the act, its action falls within the scope of the statute? We think these questions must be answered in the negative. The second section requires the city to "restore such navigable stream to the depth as specified in this act"; that is, "to the depth of at least three feet at low-water mark." Here we are called to construe the word "restore," which etymologically signifies "to bring back to a former and better state"; "to bring back or put back to a former position or condition." Cent. Dict. This would seem to require proof either

65 N.Y.S.—2

that such former or better condition ever existed, or that it existed at the time of the passage of the act. There is no specific finding of fact that the creek ever had "from its mouth to the head of tide water," which is the Horsfalls Mill Pond, such a depth as is referred to in the statute. The act limits its operation to a tide-water creek which "before such diversion was navigable for vessels of twenty or more tons burthen." There is a finding that the diversion of the water occurred after April 22d. This evidently relates to the continuance of the original diversion. There is no evidence that at the time of the diversion of April 22d the creek was navigable for vessels of 20 or more tons burden from the mouth to the dam, and there is no finding that such navigability existed. A river may be said to be navigable when only its lower portion is such. In the present case the creek is still navigable for vessels such as are described in the act, nearly to the dam. Does the penalty attach unless the city shall create a depth of water which possibly never existed (that is, three feet, at low water, from the mouth to the dam), and which certainly did not exist when the act became a law? The plaintiff concedes that the act is both remedial and penal. It is stated by Mr. Sutherland, in his Statutory Construction (section 371), that:

"If a statute creates a liability where otherwise none would exist, or increases a common-law liability, it will be strictly construed. A statute even when it is remedial, must be followed with strictness, where it gives a remedy against a party who would not otherwise be liable."

What was the remedy which the statute was designed to create? Taken literally, it provides that, if the city diverts any amount (even a quart) of water which otherwise would flow into any navigable tide-water creek, it shall be liable, under heavy penalties, to deepen the creek to three feet below low water, irrespective of the amount of damage to navigation caused by such diversion, or of the previous condition of the creek. I cannot take such a view of the statute. It is reasonable to construe it as meaning that if the city should in the future erect works or use any new means to diminish the flow of fresh water so as materially to decrease the existing navigability of a tide-water creek, which immediately before had a navigable depth of three feet at low water, the city should restore the depth and width of the creek to such previous condition. We cannot believe that the statute should be construed otherwise than as meaning that, if the city, by some new means of diverting water, decreases the navigability of a tide-water creek, it must restore the conditions of navigability which existed when the statute was passed; and there is no evidence that any new act of the city has in any way affected the depth of the creek, or decreased its navigable condition as it existed at the time of such passage. For these reasons, the judgment should be reversed.

Judgment reversed, and a new trial granted; costs to abide the event. All concur; BARTLETT, J., in result.