ROBERT D. GLENNIE, Appellant, *v.* THE FALLS EQUIPMENT COMPANY, INC., and Another, Respondents.*

Fourth Department, March 15, 1933.

*Edward E. Franchot* and *Harrop A. Freeman,* for the appellant.

*John O. Chapin,* for the respondent Martin.

*Frank H. Hiscock,* for the respondent The Falls Equipment Company, Inc.

* Affg. 142 Misc. 316.

EDGCOMB, J. Plaintiff has been awarded a verdict of $25,000 against each of the above-named defendants for injuries which he received on the morning of August 1, 1925, while riding in a car owned by the defendant Falls Equipment Company, Inc., and driven by the defendant Martin. The trial court set the verdict aside, and granted the motion of the defendant equipment company for a nonsuit, decision of which motion had been duly reserved. A new trial was ordered as to the defendant Martin. Plaintiff appeals.

While the facts, so far as they relate to the manner in which the accident happened, are not out of the ordinary, the relationship which existed between the parties is unique.

Plaintiff was the president, general manager and directing head of the defendant Falls Equipment Company, Inc., a corporation engaged in the sale of the products of the General Electric Company. The defendant Martin was employed by the company as one of its salesmen.

On the day of the accident plaintiff had been called to Schenectady on the business of the company. He drove one of its cars. Mr. Martin's wife was in the hospital at Albany, and he had been granted permission to visit her over the week-end. The suggestion was made that Martin ride as far as Schenectady with the plaintiff, and go from there to Albany by train. Accordingly, the two started out on their journey from Niagara Falls, plaintiff driving the car, and Martin sitting beside him on the front seat. At Brockport plaintiff remarked that he had been up late the night before, and was very tired. The suggestion was made that Martin take the wheel, and relieve the plaintiff. Accordingly appellant turned the operation of the car over to Martin, and got over on the back seat, and, if he did not fall asleep, he was at least unmindful of what was going on about him. When the car reached a point some two or three miles west of Spencerport, Martin lost control of the machine, and it skidded, and struck the abutment of a bridge. Plaintiff was thrown to the pavement, and sustained serious injuries.

While the evidence as to just how this accident happened is not very satisfactory, there is evidence that Martin was driving forty-five miles an hour on a wet pavement for a distance of more than a quarter of a mile. The statute at that time (Highway Law, § 287*) made a speed in excess of thirty miles an hour for a distance of one-fourth of a mile presumptive evidence of driving at a careless and imprudent rate of speed. Martin's negligence was, therefore, a question of fact for the jury.

---

* See Laws of 1929, chap. 54, §§ 95, 97, 99; Vehicle and Traffic Law, § 56, as amd. by Laws of 1931, chap. 518.— [REP.

This brings us to the serious question in the case, and to the real bone of contention here. Assuming, as we must from the verdict of the jury, that Martin was negligent, does it necessarily follow that the equipment company, the owner of the car, was also negligent? Is the relationship of the parties such as to make the company responsible for Martin's negligence? I think not.

So far as any common-law liability is concerned, it is clear that the equipment company is not answerable for the consequences of Martin's act. Martin was either in the employ of the corporation at the time of the accident, or he was not. Appellant must take one horn of the dilemma or the other. Whichever theory he adopts makes but little difference, because under either no common-law liability exists so far as the equipment company is concerned.

If Martin was a mere passenger or invited guest in the car, if he was not in the automobile in the capacity of an employee of the corporation, if the trip was in no way incident to his employment, if he was being transported from Niagara Falls to Schenectady solely for his own personal convenience, if Martin and his employer were at the time legal strangers, then, clearly, the relation of employer and employee did not exist between the two, and Martin's negligence would not be imputable to the equipment company. Under such circumstances, the act of Martin would have no more binding effect on the company than that of an entire stranger whom the plaintiff had permitted to drive the car.

On the other hand, if it should be held that the relation of employer and employee continued to exist between the defendants during this trip, notwithstanding the fact that the purpose of Martin in making the journey was in no way connected with the business of his employer, it must be held, I think, that the plaintiff and Martin were fellow-servants, and that the plaintiff, when he turned the operation of the car over to Martin, assumed the risk of the latter's negligence. (*Fay* v. *DeCamp*, 257 N. Y. 407, 409, 410.)

Both plaintiff and Martin were engaged in a common employment; both were directly contributing to the joint object of their common employer in the business for which their services were engaged. Even though their work was different, they were, nevertheless, fellow-servants employed by a common master. (*Fay* v. *DeCamp*, 257 N. Y. 407, 409, 410; *Erjauschek* v. *Kramer*, 141 App. Div. 545, 547; *Zilver* v. *Graves Co.*, 106 id. 582, 586; *Miller* v. *American Sugar Refining Co.*, 138 id. 512.)

" One who engages in work with others takes the chances, not only of his own negligence, but of the negligence of which his fellow-servants may be guilty; and it is as well settled as any rule can be that he cannot recover from the common master, damages

in respect to the negligence of the fellow-servant any more than for damages arising from his own want of care." (*Stringham* v. *Hilton,* 111 N. Y. 188, 198.)

The fellow-servant rule has not been abrogated, and, if Martin's presence in the automobile was incident to his employment, plaintiff, when he turned the operation of the car over to Martin, assumed the risk of the latter's negligence.

Martin was employed to sell goods, and not to drive this car. His competency for the latter purpose is not involved here, and equipment company cannot be held liable on the theory that the master had employed an incompetent servant. No one connected with the defendant corporation, except the plaintiff, gave Martin permission to drive the car. Plaintiff will not be permitted to say that, while he was justified in assuming Martin was competent and able to drive the car, the equipment company should have known otherwise. There is no evidence to sustain a finding that the car was defective. In fact, there is an absence of any evidence of personal negligence upon the part of the corporation.

The trial court charged the jury, and rightly so, that the equipment company could not be found remiss in its duty except upon the theory that Martin was negligent, and that no verdict could be rendered against the equipment company unless one was found against Martin. That instruction, therefore, became the law of the case.

But plaintiff says that his cause of action against the equipment company is saved by virtue of the provisions of section 59 of the Vehicle and Traffic Law. This much quoted section, so far as it has any application to this case, reads as follows: " Every owner of a motor vehicle or motor cycle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle or motor cycle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

Plaintiff urges that a corporation can only act through its agents and servants, and that when he, as president and general manager, gave Martin leave to drive the car, the corporation gave such permission, and that, as the car was being used in the business of the company at the time, the corporation was liable for Martin's negligence under the madate of the statute. Defendant corporation, on the other hand, insists that the peculiar status of the plaintiff at the time of the accident was such as to take the case out of the provisions of the section above quoted, and to preclude any recovery thereunder.

It is true, as urged by the plaintiff, that a statute cannot be

changed by construction so as to nullify or repeal its clear and express language and command. Construction by the court will not be resorted to when the words employed by the Legislature have a definite and fixed meaning, and the purpose and intent of the act are apparent and certain. The court has no right by interpretation to add to or take away from the clear, unambiguous and positive mandate of the statute. (*Tompkins* v. *Hunter*, 149 N. Y. 117, 122, 123; *Matter of Emerson* v. *Buck*, 230 id. 380, 388; *Matter of Morse*, 247 id. 290, 299; *Matter of DePeyster*, 210 id. 216, 224; *City of New York* v. *Whitridge*, 227 id. 180, 183.)

However, a strict, narrow and literal interpretation of a statute is not always to be adopted. It is seldom that a word or expression does not yield to more than one meaning. The spirit rather than the letter of the law determines the construction which should be given to it. If the general purpose of the Legislature is apparent from the language of the act, it should be given play, even though the literal and technical meaning of the statute would seem to imply otherwise. (*Surace* v. *Danna*, 248 N. Y. 18; *People ex rel. Wood* v. *Lacombe*, 99 id. 43, 49; *People ex rel. 23rd St. R. R. Co.* v. *Commissioners of Taxes of N. Y.*, 95 id. 554, 558.)

The provisions of a statute must always be read in the light of its history, and of its purpose. (*Matter of Frasch*, 245 N. Y. 174, 180.)

In construing a statute the court should give heed to the conditions which existed at the time of its enactment, and the particular evil which it was designed to remedy. (*Psota* v. *Long Island R. R. Co.*, 246 N. Y. 388, 393; *Woollcott* v. *Shubert*, 217 id. 212, 221; *Cohen* v. *Neustadter*, 247 id. 207, 210; *Boissevain* v. *Boissevain*, 224 App. Div. 576, 578, 579.)

The purpose of section 59 of the Vehicle and Traffic Law, and of its predecessor, section 282-e of the Highway Law,* is well known. It is stated by the Court of Appeals in *Psota* v. *Long Island R. R. Co.* (246 N. Y. 388, 393) and *Cohen* v. *Neustadter* (247 id. 207, 210). An automobile in the hands of a careless driver is an agency of danger on our congested highways. Under the old law a person injured by a motor vehicle had no remedy against the owner, unless the car was being driven by him personally, or by someone in his business. The fact that the owner chose the person to whom he intrusted his automobile made no difference. He could escape liability upon the plea that the car was not being used in his business, notwithstanding the fact that he had made it possible for the accident to happen by putting the machine in the hands of a careless

---

* See Laws of 1929, chap. 54, §§ 95, 97, 99.—[Rep.

or irresponsible operator. The driver was many times financially unable to respond in damages, and the injured party, who was entirely innocent in the transaction, was without redress. It was to remedy such a condition that the statute was enacted.

A statute which creates a liability where none would otherwise exist, or which increases a common-law liability, should be strictly construed in favor of persons sought to be subjected to its operation. Such statute will not be extended so as to include a liability other than the one designated or fairly within its terms. (*Dean* v. *Metropolitan Elevated R. Co.*, 119 N. Y. 540, 547; *Town of Hempstead* v. *City of New York*, 52 App. Div. 182, 188; *Smith* v. *Boston & Albany R. R. Co.*, 99 id. 94, 98.)

It is inconceivable that the Legislature ever intended to make the corporate owner of a motor vehicle liable to its president and directing head for injuries received while using the company's car, by reason of the negligence of some guest, whom the president had invited to ride with him, and whom he, for his own personal accommodation, had temporarily installed as driver. That would be putting an unreasonable and absurd construction upon the statute; one which would result in a palpable injustice. The act was never intended to cover such a situation. Of course, a corporation is a legal entity, quite separate and apart from its officers and directors, and can only act through its officers, agents or servants. But here the very person who was responsible for the car being turned over to Martin, and who gave him permission to drive it, is the very one who was injured, and who seeks to hold the owner of the machine. It was the plaintiff who made it possible for this accident to happen. The change of drivers was for the sole convenience of plaintiff. He was not acting for his corporation when he gave Martin the wheel; he was acting for himself. He cannot take advantage of his own act which made the accident possible.

Notwithstanding the fact that appellant had temporarily handed over the operation of the automobile to another, and in spite of the fact that he was occupying the back seat, he had not abandoned the car; he was still in charge of it; he did not relinquish his control over the driver; " he was still the director of the enterprise, still the custodian of the instrumentality confided to his keeping, still the master of the ship." (*Grant* v. *Knepper*, 245 N. Y. 158, 165; *Arcara* v. *Moresse*, 258 id. 211, 213, 214.)

Glennie never left the car; he never relinquished dominion over it. The rule applicable under the statute in the absence of the owner has no application under the circumstances disclosed by the record. (*Gochee* v. *Wagner*, 257 N. Y. 344.)

Martin was driving the car for the plaintiff, and was his servant

or agent. Had Martin's negligence, while he was at the wheel, been the cause of an injury to some traveler on the highway, plaintiff would have been liable under the rule of *respondeat superior*. Martin's negligence being attributable to Glennie, the latter's cause of action against the equipment company is barred, if it would otherwise exist. (*Gochee* v. *Wagner*, 257 N. Y. 344.)

While our attention has not been called to a similar case, *Leppard* v. *O'Brien* (225 App. Div. 162; affd. without opinion, 252 N. Y. 563) shows the limitations which the court has put upon the statute here under consideration. In that case it was held that section 282-e of the Highway Law was not designed to make each part owner of a motor vehicle liable for the consequences of the negligent operation of a co-owner, or his agent. It was said that the Legislature never intended that the vicarious liability created by the statute should be visited upon one who could not prevent or control the use or operation of his car by withholding permission. By analogy, it can well be said that the law-making body never contemplated by this act to make a corporate owner responsible to one of its officers, who is invoking the benefit of the statute, where that officer was the very one who intrusted the car to the person whose negligence caused the accident.

I have, therefore, come to the conclusion that there can be no recovery here as against the defendant Falls Equipment Company, and that the trial court was right in dismissing the complaint as to it.

Even if it should be held that the nonsuit as to the defendant equipment company was improperly granted, the verdict against that defendant could not properly be reinstated, and a new trial as to it would necessarily follow, inasmuch as we are about to affirm the order granting a new trial as to Martin. It would not be proper, under the circumstances, to reinstate the verdict against one defendant and grant a new trial as to the other. If the facts warrant a new trial as to Martin, they certainly require the same procedure as to the equipment company. However, if the view which we take of the law affecting the liability of the equipment company is correct, there is no question of fact to be passed upon by the jury.

The liability of the defendant Martin is clearly a question for the jury. That tribunal was loath to find him negligent. Notwithstanding the definite and positive instructions of the court that the equipment company could not be found liable except upon the theory that Martin was negligent, the jury returned a sealed verdict for $25,000, but failed to say which defendant it was against. They were sent back, and later returned with a verdict against

the corporation, and in favor of Martin. The court called their attention to the charge, and again stated that there could be no verdict against the Falls Equipment Company, Inc., unless there was one against Martin, and sent them back the second time to reconsider the case. Later they returned with a verdict against both defendants. Apparently the final verdict, so far as Martin is concerned, was the result of restraint. The jury evidently misunderstood or deliberately disregarded the instructions of the court. It was this action on the part of the jury, and their apparent insistence that Martin should be let out, together with some damaging remark, which does not appear in the record, which induced the trial court to set aside the verdict as to Martin, and to grant a new trial. The trial judge evidently thought that justice demanded that another jury should pass upon Martin's liability. We are loath to disturb his discretion. He was in a better position to say what should be done under all the circumstances than are we. We can hardly say that he acted unwisely, or without reason. We have a good precedent for upholding the decision as to Martin in the case of *Nalli* v. *Peters* (213 App. Div. 735, 737; modfd. on other grounds and as modfd. affd., 241 N. Y. 177).

I think that the decision of the trial court should not be disturbed, and that the judgment and orders appealed from should be affirmed.

All concur.

Judgment and order as to the Falls Equipment Company, Inc., affirmed, with costs, on the law and facts, and order as to defendant Martin affirmed, with costs, on the facts.