The People of the State of New York, on the Complaint of Abraham J. Lifton, Respondent, *v.* Capitol Fuels of Queens, Inc., Appellant.*

The People of the State of New York, on the Complaint of Thomas J. B. Spencer, Respondent, *v.* Capitol Fuels of Queens, Inc., Appellant.†

Court of Special Sessions of City of New York, Appellate Part, Second Department, March 27, 1939.

* Affg. 168 Misc. 912.                    † See, also, 170 Misc. 769.

*Goldstein & Goldstein* [*Jonah J. Goldstein* of counsel], for the appellant.

*William C. Chanler, Corporation Counsel* [*Charles E. Ramsgate* of counsel], for the respondent.

BAYES, Ch. J.   Appeal by defendant from judgments rendered in the Magistrates' Court of the City of New York, Municipal Term, Part II, Borough of Brooklyn, on July 26, 1938, convicting defendant of violation of title B, article 4, section B36–34.0 of the Administrative Code of the City of New York — selling and delivering a certain type of hard fuel in quanity other than one ton or multiples thereof.   A fine of $100 was imposed in each of the two cases, and, since the same provisions of the Administrative Code are involved and the issue identical, this opinion applies to both.

The complaint in the case bearing docket No. 5620, made by Abraham J. Lifton, an inspector of the department of markets, charged that on June 2, 1938, in the county of Kings, defendant unlawfully sold and delivered a quantity of pea coal weighing 19,500 pounds and represented said coal to weigh 19,500 pounds, and further " that said quantity of pea coal was not a multiple of one ton and therefore in violation of Title B of Article 4, Section B36–34.0 of the Administrative Code of the City of New York."

The complaint in the case bearing docket No. 5621, made by Thomas J. B. Spencer, an inspector of the department of markets, charged that on May 27, 1938, in the county of Kings, defendant unlawfully sold and delivered " certain quantities of pea coal, to wit, 21,600 lbs. in one load, 22,700 lbs. in another load, 21,400 lbs.

in another load, and 19,300 lbs. in another load," in violation of the section hereinabove referred to, since the quantities were not in a multiple of one ton.

Inasmuch as the decision turns upon questions of law there is no necessity of reviewing the evidence other than to say that the testimony of the inspectors supported the allegations contained in the complaints and that the coal delivered consisted of anthracite pea coal.

The section of the Administrative Code here involved reads as follows:

" B36–34.0. Compartments, quantities and numerals.   a. All types of solid fuel, other than coke, soft coal, anthracite, buckwheat, rice, barley, or dust, or mixtures thereof, whether for sale to a consumer or for resale, must be sold or delivered in quantities of one ton or multiples thereof, in the smallest number of compartments within the limits of their rated capacities, the total weight not to exceed the rated capacity of the vehicles as expressed in the application for a solid fuel vehicle license; provided, however, that solid fuel may be sold in quantities of one-half ton and delivered in one-half ton compartments, or, when the delivery of a particular size to one purchaser is not more than one-half ton, such half-ton may be delivered in a compartment of any size, or may be sold and delivered in bags in quantities up to one hundred pounds or multiples thereof, not exceeding one-half ton in the aggregate, provided, however, that no bagged or solid fuel shall be sold or delivered to the owner of a vehicle who is also purchasing loose solid fuel, both to be transported in the same vehicle at the same time.   The minimum net capacity of a one-ton compartment must be thirty-five cubic feet, the minimum net capacity of a one-half ton compartment must be seventeen five-tenths cubic feet and the maximum net capacity of a one-half ton compartment must be not more than thirty-one cubic feet."

Defendant-appellant challenges the judgments on two grounds, *first*, that the deliveries in question were anthracite coal, a type excepted by the statute, and, *second*, that the statute is unconstitutional.

In support of the first point defendant-appellant contends that since, in the Administrative Code as printed, a comma appears after the word " anthracite," there is a clear exemption in favor of the coal in question, as well as in favor of coke, soft coal, rice, barley, etc.   In reply the People point out that in the ordinance, which was intended to be re-enacted verbatim by the State Legislature, there was no comma after the word " anthracite," and that the insertion of the comma was a palpable error which, if given

effect, would defeat the intent of the Legislature to adopt this section of the Code of Ordinances unchanged.

Unquestionably the comma referred to did not appear in the Code of Ordinances of which subdivision 7 of section 31 of chapter 15 read as follows:

" 7. Compartments, quantities and numerals. All types of solid fuel, other than coke, soft coal, anthracite buckwheat, rice, barley, or dust, or mixtures thereof, whether for sale to a consumer or for resale, must be sold or delivered in quantities of one ton or multiples thereof, in the smallest number of compartments within the limits of their rated capacities."

We are of the opinion that the State Legislature intended to adopt this section of the Administrative Code unchanged and that it should be so read and applied. Upon the question of legislative intent, attention is drawn to section 982–1.0 of the Administrative Code, as follows:

" § 982–1.0. Legislative intent. It is the intent of the Legislature by this act to provide an administrative code for the city of New York harmonizing with the provisions of the New York city charter. Insofar as this act revises, consolidates, codifies, continues or restates the provisions of any statutes, local laws or ordinances, applicable to the city of New York and in force on December thirty-first, nineteen hundred thirty-seven, such provisions shall be deemed *unchanged in substance* and effect except as may be necessary to harmonize them with the New York city charter except as any of such provisions are specifically repealed by this act. If in this code there shall have been incorporated any provision of law, general, special or local, or a provision of any ordinance, that heretofore shall have been superseded or specifically or impliedly repealed, the incorporation of any such provision shall not revive such superseded or repealed provision, nor shall such incorporation be construed to indicate any legislative determination that such provision had not been theretofore so superseded or repealed. If in this code there shall have been incorporated any new provision, which is not a revision, consolidation, codification, continuance or restatement of the provisions of a statute, local law or ordinance applicable to the city of New York and in force on the thirty-first day of December, nineteen hundred thirty-seven, except as the same shall have been necessary to harmonize the provisions of this code with the provisions of the New York city charter, such new provision shall not become effective, but shall be deemed an inadvertence or error."

(See *Matter of Mullins* v. *Kern*, N. Y. L. J. June 22, 1938, p. 3008, wherein Mr. Justice ROSENMAN draws attention to section

1-0.0 of the Administrative Code, stating its purpose to be " solely to codify and restate present existing statutes and laws, general, special and local, except in instances where changes are necessary to conform such statutes and laws to the New York City Charter.")

The cases cited by defendant-appellant, viz., *Matter of State Bank of Binghamton* (152 Misc. 579); *Terminello* v. *Bleecker* (155 id. 702); *Continental Casualty Co.* v. *Nelson* (147 id. 821); *Leach* v. *Kenyon* (146 id. 571); *Glennie* v. *Falls Equipment Co., Inc.* (238 App. Div. 7); *Lee* v. *Bailey Corp.* (240 id. 65); *McCluskey* v. *Cromwell* (11 N. Y. 593); *People* v. *Gitlow* (195 App. Div. 773; affd., 234 N. Y. 132; Id. 539; 268 U. S. 652), and *Matter of De Peyster* (210 N. Y. 216) merely bear on the rules to be applied in the interpretation of legislative enactments, but have no application to the case at bar, wherein the legislative intent to re-enact the section in question without change is so clearly manifest.

The second ground urged by defendant-appellant, that the section is unconstitutional, rests upon two contentions, one that it arbitrarily interferes with the fundamental rights of citizens guaranteed by the Constitution, and the other that it is discriminatory in that the county of Richmond is exempt.

As to interference with fundamental rights, we must keep in mind that in a social order such rights are relative and not absolute. It is well known that in a city such as New York the householder is in no position to check the weight of coal that is delivered to him. Hence it is but natural that the city should seek, by appropriate legislation, to guard against fraud or mistake in a commodity so essential as coal. An examination of article 4 of the Administrative Code discloses a carefully worked out plan intended so to regulate the entire industry as to conserve the welfare of the community as a whole. This article includes various requirements, viz., sale by weight, weighing by licensed weighmaster, vendors' permits, transportation in licensed vehicle, weight of coal to be marked on side of truck, use of compartments under certain conditions, display of name of dealer on both sides of the truck. Can it reasonably be said that these requirements, together with the requirement for sale in multiples of one ton, do not tend to protect the public and promote the general welfare? It is to be noted that article 4 makes provision whereby a dealer may sell a half ton to a customer, or one and one-half, or two and one-half, etc. Moreover, only the domestic sizes of anthracite coal which are generally used by householders are affected by the section. The cases of *Burns Baking Co.* v. *Bryan* (264 U. S. 504) and *City of Buffalo* v. *Collins Baking Co.* (39 App. Div. 432), cited by defendant-appellant, are not controlling. In both cases there were under consideration

regulations relating to the weight of bread, and the court merely held that it was not apparent the public welfare would be promoted thereby. On the other hand, in the case at bar, the various provisions relating to coal are so carefully worked out that one cannot escape the conviction that the section was only enacted after full consultation with representative dealers in the coal industry as well as those competent to speak from the standpoint of the public.

We come now to defendant-appellant's point that the exemption of the county of Richmond renders the section unconstitutional on the ground that it is discriminatory. This exemption, as it seems to us, may properly rest upon the exercise of legislative discretion. The following cases which are cited by the People tend to support the section as applicable to the remaining four counties of the greater city: *People ex rel. Bryant* v. *Zimmerman* (241 N. Y. 405; affd., 278 U. S. 63); *People* v. *Tilford* (268 N. Y. 557); *People* v. *Star Metal S. & R. Co.* (274 id. 617), and *Carroll* v. *Greenwich Ins. Co.* (199 U. S. 401). The defendant-appellant cites *People* v. *Klinge* (276 N. Y. 292) and *People* v. *Cohen* (272 id. 319). In the *Klinge* case the legislation prohibiting peddling was attempted to be limited to the fifth ward, borough of Queens, and in the *Cohen* case the court held that the restriction in the sale of foodstuffs in the manner attempted, as applied to certain sections in Manhattan, bore no relation to the public welfare, but was designed " for the convenience and interest of a special class." In both cases the restrictions were made to apply to limited area within a single borough. In the case at bar the exempted area comprises an entire county somewhat remotely separated from the other four boroughs, less densely populated and, we may assume, regarded by the legislators as not being, as yet, is need of the regulations regarding the sale and delivery of coal. The judgments of conviction in both cases should be affirmed.

HACKENBURG, J., concurs; WALLING, J., dissents, with memorandum.

WALLING, J. (dissenting). I vote to reverse on the authority of *People* v. *Klinge* (276 N. Y. 292) and *People* v. *Cohen* (272 id. 319).