it was made on no such basis. On the contrary, the employé claimed no right to an increase of salary, and assured the defendant's president in advance that he did not intend to quit service under the contract. To keep him from quitting unless his salary were raised was therefore not the consideration for the new agreement.

The new agreement being oral was also void under the statute of frauds, for that it was not by its terms to be performed within one year from the making thereof. It was made in June, 1904, and was not to be performed until October 20th, 1905. If it could be said that the employé performed under it, it would be void just the same. If he would have any right of action it would not be on the void agreement, but on a quantum meruit. Erben v. Lorillard, 19 N. Y. 299. The statute of frauds creates a rule of evidence, and he could not prove the new agreement at all for lack of writings. Cases where the contract was carried out by both sides, like Kramer v. Kramer, 90 App. Div. 176, 86 N. Y. Supp. 129, have no application here.

That the terms of the written contract are that the plaintiff's assignor was to be paid "not less than" the salaries specified in such contract, presents no different case. Those were the salaries to be paid unless the parties agreed upon larger ones, and such new agreement would still have to be a valid one under the statute of frauds.

The judgment should be affirmed.

Judgment unanimously affirmed, with costs. All concur.

(53 Misc. Rep. 403)

BAMBERG v. INTERNATIONAL RY. CO. et al.

(Supreme Court, Special Term, Erie County. February, 1907.)

1. MASTER AND SERVANT—INJURIES TO THIRD PERSONS—NEGLIGENCE OF SERVANT—SCOPE OF EMPLOYMENT.

Plaintiff, a passenger on an open street car, was injured by the pole of a wagon belonging to defendants S. being driven into the car in a collision at a street crossing. The driver of the wagon disobeyed instructions, and permitted a boy to drive the team prior to the collision. The boy drove the team at a trot toward the crossing, and, seeing he was unable to stop in time to prevent the collision, called to the driver, who seized the reins, which had been at all times within his reach, but was unable to stop in time. *Held*, that the boy at the time of the accident, though not within the employ of defendants S., was engaged in their business, and that they were therefore liable both for his negligence and the negligence of the driver.

2. CARRIERS—STREET RAILROADS—INJURIES TO PASSENGERS—NEGLIGENCE—RES IPSA LOQUITUR.

Where an open street car approached a street crossing at a high rate of speed, and was driven over the same without reducing the speed, resulting in a collision with an approaching team, so that the pole of the wagon penetrated the car near the rear, and injured plaintiff, a passenger, the circumstances of the accident were sufficient to raise a prima facie case of negligence of the carrier under the doctrine, "Res ipsa loquitur."

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1287.]

3. TRIAL—JOINT DEFENDANTS—RECEPTION OF EVIDENCE—EFFECT.

Defendant railway company and defendant S. were joint defendants in an action for injuries to a passenger. Each interposed a separate

answer and appeared by different counsel. Plaintiff offered evidence to charge both defendants with negligence, and rested, and, after a motion for nonsuit by each defendant had been denied, the railway company examined its witnesses and renewed its motion for nonsuit, which being denied the railway company took no further part in the case, after which defendant S. examined his witnesses, some of whose testimony tended to show negligence on the part of the railroad company. At the close of the evidence counsel for all the parties summed up the case. A verdict was returned against both defendants. *Held* that, the railway company having withdrawn from the case after the denial of its second motion for nonsuit, the testimony subsequently given by its codefendant could not supply defects in the evidence as against it, and should have been disregarded.

Action by Ernst Bamberg against the International Railway Company and others. On motion by defendants for a new trial on the minutes. Sustained as to defendant International Railway Company, and overruled as to the other defendant.

Charles B. Sears, for defendant railway company.
J. Henry Metcalf, for defendants Sutton.
Hamilton Ward, for plaintiff.

WHEELER, J. This action was brought to recover damages for injuries received by the plaintiff while riding on the defendant railway company's car, which collided with a wagon owned by the defendants Sutton. The jury rendered a general verdict against all defendants, and the counsel for each defendant moves for a new trial on behalf of their respective clients.

The accident happened at the crossing of Michigan and Clinton streets in the city of Buffalo. The railway company operates a street car line on Michigan street, and has double tracks in the street at this point. On the morning of the accident the plaintiff took a car going south on Michigan street. It was what is known as an "open" car, having seats running across the car, and was provided with a running board along its side. As the seats were filled, the plaintiff was standing on the running board. As the car approached Clinton street, which crosses Michigan street at right angles, a wagon belonging to the Suttons was approaching the tracks from the west. The motorman operating the car proceeded to cross Clinton street, while the wagon drawn by a span of mules continued to move toward the tracks on a trot. The result was that the pole of the wagon struck the car at about the third seat from the rear end of the car. It hurled the plaintiff to the ground, and he received serious personal injuries, which will disable him for the remainder of his life.

The evidence of negligence on the part of the driver of the wagon was most conclusive. The defendants Sutton were the proprietors of an ice cream business, and the wagon in question was employed by them in the distribution of ice cream, and was one of many wagons operated by that firm. On the morning of the accident this wagon, drawn by a span of mules, left the stables of the defendants Sutton in charge of a driver by the name of Harvey. There is no claim but that Harvey himself was an experienced and competent driver, but, as he left the stables, he took onto the driver's seat with him a boy, whose name he does not

appear to have even known, and whose ability to drive or handle horses was wholly unknown to the driver. The subsequent events demonstrate very conclusively that this lad must have had no experience whatever as a driver. Shortly before this wagcn reached Michigan street, where the accident happened, Harvey, the driver, got off the seat and climbed back into the rear of the wag n to do something to the ice cream cans with which it was loaded, and in so doing handed the reins to the boy on the seat, although he claims they were still within his reach as he worked at the cans. The wagon continued to approach Michigan street, and the motorman, supposing the wagon would stop, continued his way across Clinton street. The most reliable evidence tends to show that the wagon did not slacken its speed, but continued to come right on toward the car on a trot. The boy holding the reins pulled up on the reins carrying his hands over his head, but that, owing to the lack of any proper hold on the reins, he did not apply any pull to the reins so as to arrest the speed of the mules, and the result was that the pole of the wagon crashed into the side of the car as stated. Harvey, the driver, testified that he supposed the car would stop, and gave no more attention to the matter until the boy on the seat called out that the car was not going to stop; that he then grabbed the lines, and made a desperate effort to stop the team, but was too late to avoid the collision.

I do not understand there is any serious claim on the part of the defendants Sutton that the team was properly handled. The contention, however, is made that Harvey, the driver, had received explicit instructions from the defendants not to permit strange boys to ride with him, or to drive the team, and that in this Harvey disobeyed these directions, and that the defendants Sutton ought not to be held liable for the negligent acts of the boy driver, whom it is claimed was not their servant. The counsel for the defendants Sutton cites and relies upon the case of Long v. Richmond, 68 App. Div. 472, 73 N. Y. Supp. 912, affirmed in 175 N. Y. 495, 67 N. E. 1084, without opinion. The facts in this case, however, distinguish it from the case of Long v. Richmond. In the case above cited the plaintiff was injured by a friend or companion of the defendant's coachman while riding a polo pony. The defendant owned two polo ponies, one a chestnut and the other a gray, and had instructed his assistant coachman not to let anybody ride the gray pony, either to or from the polo grounds; but to ride the chestnut pony and lead the gray. On the day of the accident a neighbor of the defendant, whom the defendant permitted to use the ponies, directed the assistant coachman to take the ponies to the polo grounds. At the time such direction was given one Eckert, who was not and never had been in the employ of the defendant, was with the assistant coachman, and the latter permitted Eckert to accompany him to the grounds, the assistant coachman riding the chestnut, and Eckert, in violation of the defendant's instructions and without his knowledge, riding the gray. The ponies were then used on the grounds, and after the game had been concluded the assistant coachman and Eckert mounted as before. The assistant coachman started for home with the chestnut pony, but Eckert rode about the polo grounds with the gray in such manner that it became frightened and ran into the public streets, where it came into collision with the plaintiff's wagon, and caused the

damages sought to be recovered. It was there held the defendant was not liable under the circumstances. It will be noted that in that case Eckert was in no way engaged in the defendant's business at the time of the accident. He took the pony to the polo grounds for the accommodation of the neighbor of the defendant, who used it after reaching the ground, and after the game was over, instead of returning home, Eckert was riding the pony about the grounds, apparently for his own pleasure and amusement. He certainly was doing nothing connected with either the defendant's business or amusement, and the court properly held the owner was not responsible for Eckert's acts under the circumstances. In this case, however, the lad on the seat was engaged in the prosecution of the business of the ice cream concern. The team and wagon were out engaged in the delivery of ice cream to the defendants' customers, and these facts clearly distinguish this case from that of Long v. Richmond. The evidence in this case goes even further. It appeared that it had been the custom of the driver to start out his trips with a boy to assist him in driving and distributing ice cream, and that, the regular boy being absent on the morning in question, the driver took this strange lad in his place, and at the very time of the accident he was assisting in doing the business of the master, and aiding Harvey, the driver, in doing the work the other boy was required to do. It further appeared from Harvey's statement that he, in a way at least, still remained in control and management, not only of the wagon, but also of the team itself, for he testified he left the reins within reach so he could seize them and did seize them at the last moment in an effort to stop the team, but too late to avoid the collision. So the accident appears to have been caused in part by the negligent act of Harvey, the driver, in not retaining complete control of the reins, or in not properly watching for and guarding against the approaching car. The accident may be said to be fairly attributable to the negligent acts of Harvey himself when in immediate control and management of the wagon and team, and while engaged in the prosecution of his master's business.

This case appears rather to fall within the rule applied in the case of Althorf v. Wolfe, 22 N. Y. 355, where the plaintiff's intestate was killed by being struck by ice and snow thrown from the roof of defendant's house while passing along the street below. The defendant had directed one Fagan, his coachman, to clear off the snow from the roof of his house. Fagan asked one Cashan to help him. They both went upon the roof, and both worked on the roof, throwing off the snow. Cashan was assisting at his own suggestion, and without authority from the defendant to employ any one. It was contended the defendant was not liable, but the court held to the contrary, and said that it was immaterial whether the intestate was killed by ice thrown by Cashan or by Fagan; that in either view it was substantially the act of Fagan. The court cites Both v. Mister, 7 Carr & Payne, 66, where defendant was held liable for injuries to the plaintiff's cabriolet resulting from the negligent manner in which the defendant's cart was driven, although it appeared that the defendant's servant was not driving at the time, but had intrusted the reins to a stranger who was riding with the servant, and not in the service of

the defendant; the liability being placed on the ground that the negligence causing the injury was substantially the act of the defendant's servant who was in the cart, and the master had put it in the power of the servant to do the injury.

In Cosgrove v. Ogden, 49 N. Y. 255, 10 Am. Rep. 361, the defendants were lumber dealers, and the plaintiff, a child, was injured by the falling of a pile of lumber placed in the street by defendants' employé, who had been instructed by the defendants not to pile the lumber there. The defendants were held liable for the accident, as the act was done by the servant in the prosecution of their business, and they were not relieved from responsibility by the servant's departure from their instructions in the manner of doing it. The court said:

"The test of the master's responsibility for the act of his servant is not whether such act was done according to instructions of the master to the servant, but whether it is done in the prosecution of the business that the servant was employed by the master to do." Page 257 of 49 N. Y. (10 Am. Rep. 361).

See, also, Kilroy v. D. & H. C. Co., 121 N. Y. 22, 24 N. E. 192. We therefore are clearly of the opinion that the defendants Sutton were liable for the negligence of the driver Harvey and of the boy on the seat, and of each of them, and, as to the defendants Sutton, the motion for a new trial must be denied.

The defendant the International Railway Company also moves for a new trial upon the minutes. As to this defendant, the evidence of negligence is much less satisfactory, and not altogether convincing. Nevertheless there was some evidence given on the trial from which the jury might draw the inference of negligence. It was claimed the street car did not lessen its speed while crossing Clinton street, but moved across that street at such a high rate of speed as to render it dangerous, and to put the car beyond the proper control of the motorman. There was also evidence that the motorman at the time had with him on the platform another man, whom he was instructing, and that at the time he was engaged in conversation with this person, and not properly attentive to his duties while crossing an intersecting street. The force of this evidence (which was controverted by other testimony) was very largely broken by the undisputed fact that the street car was nearly across Clinton street at the time of the collision, and that the wagon pole struck the car near its rear end; the argument being that but for the negligence of those in charge of the team the accident would not have happened. In Loudoun v. Eighth Ave. R. R. Co., 162 N. Y. 381, 56 N. E. 988, reversing the same case in 16 App. Div. 156, 44 N. Y. Supp. 742, it was held in a case of collision at a street crossing between two cars a very high degree of care is required of the carrying road, and that the doctrine of res ipsa loquitur applied to the carrying car. It would seem, therefore, that the question of the negligence of the street railway company was properly one for the jury to determine under all the circumstances of this case.

It is contended, however, that the court erred in refusing to charge the jury that in its disposition of the case, so far as the street railway company was concerned, it must disregard the testimony of the witness sworn for the defendants Sutton. The railway company and the de-

fendants Sutton were made joint defendants in this action. Each interposed separate answers, and each appeared on the trial by different counsel. On the trial the plaintiff introduced his evidence tending to charge both defendants with negligence, and then rested. Each defendant then moved for a nonsuit, which the court denied. The counsel for the railway company then took the case and swore witnesses in its behalf, and rested, and then renewed its motion for a nonsuit, which was denied. Counsel for the street railway company then stated that the railway company would take no further part in the case, but would stand on the case as then presented by the evidence. The counsel for the defendants Sutton then took the case and gave testimony in their behalf by several witnesses. The counsel for the railway company sat by, but did not examine or cross-examine the witnesses sworn by the Suttons. At the close of all the evidence counsel for all the parties summed up the case to the jury, which returned a verdict in favor of the plaintiff against all defendants. The counsel for the railway company requested the court to charge the jury that in determining the case against the street railway company the jury must not consider the evidence of the defendants Sutton's witnesses, to wit, Harvey O'Brien and Sutton. The court declined to so charge, and said he thought the jury entitled to consider all the evidence. The witnesses for the defendants Sutton, particularly the driver, Harvey, did give testimony tending to show negligence on the part of the railway, for he testified that he noticed the street car coming, and observed that the motorman had his head turned, and was talking to the man on the front platform with him. The question is therefore squarely presented whether the trial court erred in its refusal to charge as requested.

It would seem that where the subject-matter of a litigation is an accident, in which two sets of defendants are each charged with contributing to it, and the evidence produced relates to the subject of inquiry, and to the conduct of each, and describes what transpired and was done by each participant on the occasion in question, the jury should be permitted to consider all the testimony in determining the liability of each. And it would also seem that in a judicial inquiry of this character each party defendant should be prepared to meet, not only the plaintiff's case, but also any case presented by the codefendant. Of necessity in such cases a practical and almost insurmountable difficulty is presented in asking a jury of ordinary intelligence to disassociate the evidence given by one party from that given by the other.

Nevertheless counsel for the railway company contends a contrary rule has been established by the Court of Appeals in the case of Bopp v. N. Y. El. Vehicle Co., 177 N. Y. 33, 69 N. E. 122, where the court held that where one of two codefendants upon the trial of an action for negligence moves for a nonsuit at the close of the plaintiff's case, and, the motion being denied, excepts thereto, but proceeds to put in evidence and then renews the motion, and upon its denial again excepts, and thereafter cross-examines witnesses of its codefendant, and continues in the case to the end, attempting to free itself from all responsibility, the exception to the refusal to nonsuit is not available,

provided at the close of the whole case the evidence presents a question for the jury. While the identical point here raised was not decided in the Bopp Case, nevertheless the logical conclusion to be drawn from what the court held and said in its opinion demands the granting of a new trial as to the railway company. The court said:

"It [i. e., the vehicle company] did not remain in the case for amusement, but for self-defense, and it could not make further efforts to defend itself without running the usual risks. The plaintiff had the right to rely upon any evidence in her favor, whether put in by herself or by either defendant, and the vehicle company, by failing to withdraw when it had the right to and continuing to take part in the trial, ran the risk that evidence tending to make it liable would be received." Page 35 of 177 N. Y., page 122 of 69 N. E.

"The vehicle company by continuing to try its case, for that is what it did, ran the risk that the evidence of its codefendant would supply the defects in the plaintiff's case against itself. * * * The vehicle company was not compelled to remain in the case to get an exception when its second motion was not granted." Page 35 of 177 N. Y., page 123 of 69 N. E.

The court, therefore, appear to maintain the proposition, first, that a codefendant is not bound to remain in a case until the end; and, second, that by withdrawing the testimony subsequently given by a codefendant cannot be used to supply defects in the evidence against it. There seems to be no logical escape from these deductions.

We therefore conclude the trial court erred in not charging as requested that the jury could not consider the testimony of the witnesses for the defendants Sutton in determining the case against the railway company.

An order will, therefore, be entered denying the motion for a new trial as against the defendants Sutton, and setting aside the verdict and granting a new trial as against the International Railway Company.