JOHN J. GRANT, Respondent, v. FRANK KNEPPER, Appellant.

Negligence — master and servant — motor vehicles — master liable at common law for injury occasioned through negligent operation of motor truck by inexperienced employee permitted by chauffeur to drive — master not relieved from liability because substitution was unauthorized — common-law liability continued and extended by section 282-e of Highway Law.

1. Where, in an action to recover damages occasioned through the alleged negligent operation of a motor truck, it appears that the driver permitted a fellow-servant, without an operator's license, to drive, who ran the truck into plaintiff's car which had been parked along the roadway, a case was made for submission to the jury under the common-law rule of liability. The jury might find the driver

was negligent when he placed at the wheel a substitute without skill or experience in the management of cars, or in failing to supervise or control the conduct of his substitute, who ran the car at a rate of speed presumptively excessive in the operation of a truck.

2. Even though the substitution was unauthorized, the employer was not relieved of liability at common law for any negligence assignable to the driver, his authorized representative, who remained upon the truck with general power and authority of supervision and control. The negligence of the servant, though it fused with the negligence of the substitute, may none the less be found to have been the cause of the collision. (*Engelhart* v. *Farrant & Co.*, 1897, 1 Q. B. 240; *Ricketts* v. *Tilling*, 1915, 1 K. B. 644, approved.)

3. By section 282-e of the Highway Law (Cons. Laws, ch. 25) the owner's common-law liability is not only continued but extended. Under the statute " use " as well as " operation " may fasten liability upon him. In this case the truck was intrusted to the driver to be " used " in the owner's business, and the " use " did not cease while the driver remained upon the truck though the manual operation had been committed to a substitute. (*Geiss* v. *Twin City Taxicab Co.*, 120 Minn. 368, approved.)

*Grant* v. *Knepper*, 218 App. Div. 784, affirmed.

(Argued April 4, 1927; decided May 3, 1927.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 29, 1926, affirming a judgment of the City Court of Yonkers in favor of plaintiff entered upon a verdict.

*H. H. Brown* and *E. C. Sherwood* for appellant. The uncontradicted evidence showed that the defendant was not in control of the car at the time of the accident, and the motion to dismiss the complaint made at the close of the plaintiff's case should, therefore, have been granted. (*Potts* v. *Pardee*, 220 N. Y. 431; *Rose* v. *Balfe*, 223 N. Y. 481; *Powers* v. *Wilson*, 203 App. Div. 232; *Maher* v. *Benedict*, 123 App. Div. 579; *Boettcher* v. *Best & Co., Inc.*, 203 App. Div. 574; 237 N. Y. 506.) Section 282-e of the Highway Law is not applicable to this case. (Cons. Laws, ch. 25.)

*Joseph A. Corbalis* for respondent. At the time of the accident and damage to plaintiff's car the defendant's car was engaged in the business of the owner and was being legally used and operated. (*Altohorf* v. *Wolfe,* 22 N. Y. 355; *Owen* v. *Gruntz,* 216 App. Div. 19; *Plaumbo* v. *Ryan,* 213 App. Div. 517; *Fluegel* v. *Coudert,* 244 N. Y. 393.)

Cardozo, Ch. J. Defendant sent out his motor truck with a driver and a salesman to deliver merchandise. On the way back the salesman asked to be allowed to run the car, though he was without an operator's license. Permission being granted, he slipped into the seat behind the wheel while the driver stood upon the running board beside. After going about a mile and a half, the salesman ran the truck into a car which had been parked along the roadway. The truck, after striking and damaging the car, went on about forty feet till it collided with a telephone pole, which it threw to the ground. The owner of the car sues the owner of the truck.

(1) We think a case was made for submission to the jury, though liability were to be tested by the rule at common law. The driver was negligent, or so the triers of the facts might find, when he placed at the wheel a substitute without skill or experience in the management of cars. The substitute did not even have such presumptive evidence of competence as may be supplied by an operator's license (*Pigeon* v. *Mass. N. E. Ry. Co.,* 230 Mass. 392, 395; *Bourne* v. *Whitman,* 209 Mass. 155, 171), and his lack of skill is apparent in the very nature of the accident. The driver was negligent again, or so the triers of the facts might find, in failing to supervise or control the conduct of his substitute, who ran the car at a rate of speed presumptively excessive in the operation of a truck (Highway Law; Cons. Laws, ch. 25, §§ 287, 288; cf. Yonkers Code of Ordinances, art. IV, § 67, as amended by General Ordinance No. 4 of Oct. 15, 1916). We do not ignore

the fact that the substitution was itself unauthorized, and so a wrong to the employer.   Even so, the employer was not relieved of liability for any negligence assignable to the driver, his authorized representative, who still remained upon the truck with general power and authority of supervision and control (cf. *Lloyd* v. *Grace, Smith & Co.*, 1912 A. C. 716, quoting *Barwick* v. *Eng. Joint Stock Bank*, L. R. 2 Ex. 259).   If the driver had left the seat and let the car proceed without any one at the wheel, the defendant would have been liable for any damage caused thereby.   He is not less liable when the driver places at the wheel an incompetent substitute (Pollock on Torts, p. 87), or fails to intervene thereafter with protest or command when protest or command would be timely to avert the loss (*Dowler* v. *Johnson*, 225 N. Y. 39).   " Co-operation may be inferred from acquiescence where there is power to restrain " (*Dowler* v. *Johnson, supra*).   The duty rests upon the servant with continuing obligation to " keep control and exclude incompetent meddling " (Pollock, *supra*) while he remains upon the car.

Two cases in the English Court of Appeal state the applicable principle with clearness and precision.   In one (*Engelhart* v. *Farrant & Co*, 1897, 1 Q. B. 240), a delivery wagon was sent out with a man and a boy.   The man's duty was to drive; the boy's duty was to deliver parcels. The boy had nothing to do with the horses.   The man's instructions were not to leave the cart.   The driver did in fact leave the cart, and while he was absent the lad drove on and came into collision with the plaintiff's carriage and injured it.   The court held that the negligence of the driver in leaving the cart in the custody of the boy might be found to be the effective cause of the collision and the damage.   " If a stranger interferes," said Lord ESHER, M. R., " it does not follow that the defendant is liable; but equally it does not follow that

11

# 162  GRANT v. KNEPPER.

because a stranger interferes the defendant is not liable if the negligence of a servant of his is an effective cause of the accident." In the other and later case, this ruling was approved and followed (*Ricketts* v. *Tilling*, 1915, 1 K. B. 644). The driver of a motor omnibus, sitting on the box, gave the wheel to the conductor who was not authorized to drive. The conductor being inexperienced and incompetent, the omnibus mounted the pavement and injured passers-by. The court held that " there was a question of fact whether the effective cause of the accident was that the driver committed a breach of his duty (which was either to prevent another person from driving, or, if he allowed him to drive, to see that he drove properly), or whether the driver had discharged that duty " (cf. Pollock on Torts, pp. 46, 93, 492). In brief, the basis of liability is always the negligence of the servant. If such negligence exists, and is found to be an effective cause, it does not lose its significance as a basis of liability because it may be found to have combined with the negligence of the substitute.

Cases may indeed be found where the master has been subjected to a liability even broader (*Geiss* v. *Taxicab Co.*, 120 Minn. 368; *Kayser* v. *Van Nest*, 125 Minn. 277; *Bamberg* v. *Int. Ry. Co.*, 53 Misc. Rep. 403; *Hill* v. *Sheehan*, 20 N. Y. Supp. 529; *James* v. *Muehlebach*, 34 Mo. App. 512; *Ulman* v. *Lindeman*, 44 N. D. 36; 44 A. L. R. p. 1385, note, and cases there cited). There are holdings or at least dicta to the effect that if the servant is present, the act of his substitute will be taken as his own, though there was neither negligence in the selection of one inexperienced or incompetent, nor failure of supervision in circumstances where supervision could be found to be effective. We are not prepared to go so far if liability is to be measured by the rule at common law (cf. Mechem on Agency, vol. 2, § 1867; Mechem, Master's Liability for Stranger's Negligence, 3 Mich. L. Rev. 198, 216; Labatt, Master & Servant, vol. 7, p. 7732 *et seq.*). In

1927.]          Opinion, per CARDOZO, Ch. J.      [245 N. Y. 158]

saying this, we exclude situations of emergency or danger (Mechem, Agency, vol. 1, § 321; *Hoolidge* v. *Duncan,* 199 Mass. 121). There may be need, too, of other exceptions by force of some special relation, as that of carrier and passenger (*Leavenworth Elec. R. R. Co.* v. *Cusick,* 60 Kan. 590, 597). The selection of any substitute is a wrong to the employer where delegation is unauthorized, but it is not negligence toward the public if the substitute is competent, perhaps more competent than the servant, and there is no failure thereafter of fitting supervision. Most of the cases upholding a broader liability go back to *Althorf* v. *Wolfe* (22 N. Y. 355), where a servant employed to shovel snow and ice from a roof brought an assistant to help him, who injured some one on the street. One of the two opinions lays stress upon the fact that there was no limitation upon the authority of the servant to provide such help as he might choose (p. 361). Here the character of the service imports trust in the servant and a consequent restriction upon the employment of a substitute. The other of the two opinions fairly sustains the inference, when we read it in connection with the preliminary statement of the facts, that the substitute was negligently casting snow upon the street with the servant standing by and approving of the act (cf. *Haluptzok* v. *G. N. Ry. Co.,* 55 Minn. 446). If the act was so directed, the substitute was " a mere instrument or agent — a longer arm which the servant or agent wields or controls " (Mechem, 3 Mich. L. Rev. at p. 216; *Ulman* v. *Lindeman, supra,* at p. 41; *Simons* v. *Monier,* 29 Barb. 419). *Althorf* v. *Wolfe* is thus consistent with the view that there must be something more than the act of an intermeddling stranger before the wrong will be imputed to the master or the owner. In holding that the defendant would be liable at common law upon the record now before us, we place our judgment upon the ground that the negligence of the servant, though it fused with the negligence of the substitute,

may none the less be found to have been the cause of the collision. A different situation would be here if a competent substitute had been inattentive or remiss at a time when intervention by the servant would have been of no avail. The act of negligence may be " so sudden or unexpected " (*Ricketts* v. *Tilling, supra,* p. 651) that there is no reason to foresee it nor opportunity to avoid it. This may happen oftener to-day in the management of automobiles than in the days of horse-drawn vehicles when Lord ABINGER was able to say that the substitute who held the reins was the mere instrument of the driver who sat beside him on the box (*Booth* v. *Mister,* 7 C. & P. 66). Here the inference is legitimate, first, that the substitute was incompetent, and again that supervision, if vigilant, would also have been effective.

(2) Passing from common law to statute, we find the owner's liability not merely continued, but extended. By Highway Law (§ 282-e) " every owner of a motor vehicle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner." " Use " as well as " operation " may thus fasten liability upon the owner under the provisions of the statute (*Fluegel* v. *Coudert,* 244 N. Y. 393). This truck was intrusted by the defendant to Carucci, his driver, to be " used " in the transportation of persons and property to and from a stated point. It was in use for that purpose and no other when the accident occurred. The defendant expected, to be sure, that Carucci would operate the truck as well as use it. None the less, use without more would entail liability for negligence. The statute may be said in a general way to have brought about the same results as had been attained in some other jurisdictions without reference to any statute by the so-called doctrine of

" the family automobile " (*Fluegel* v. *Coudert, supra;*
*Ferris* v. *Sterling,* 214 N. Y. 249, at p. 252). Only a
narrow construction would permit us now to say that
an owner placing a car in the care of members of his
family to be used for their pleasure or for the family
business would escape liability if wife or son or daughter
should give over the wheel to the management of a
friend. The ruling has been more liberal whenever the
question has come up (*Kayser* v. *Van Nest,* 125 Minn.
277; *Thixton* v. *Palmer,* 210 Ky. 838; *Ulman* v. *Lindeman,*
44 N. D. 36, 41). Carucci did not abandon the car or
its use when he surrendered to another the guidance of
the wheel. He was still in charge of the truck, and was
using it with the permission of the master, and even in
the master's business. He did not cease to use it, and
use it with permission, though the method of operation
may have been illegal or forbidden. We think the effect
of the statute is to read into our law the rule of liability
laid down in *Geiss* v. *Twin City Taxicab Co.* (120 Minn.
368). The owner is now liable, though the negligence
of the substitute may have been " sudden and unex-
pected " (*Ricketts* v. *Tilling, supra*) if the act of negli-
gence occurs during the life of the permitted use. Carucci
was delinquent, but he was still the director of the
enterprise, still the custodian of the instrumentality con-
fided to his keeping, still the master of the ship.

(3) Errors were committed in disposing of some of the
requests to charge. In a closer case they would be
important. Upon the record before us, they did not
determine the result.

The judgment should be affirmed with costs.

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and
O'BRIEN, JJ., concur.

Judgment affirmed, etc.