ELIZABETH A. DARROHN, Plaintiff, *v.* FRANCES RUSSELL and Another, Defendants.

City Court of Rochester, Civil Branch, February 27, 1935.

*Cyril Kendal*, for the plaintiff.

*Philetus Chamberlain*, for the defendants.

WILDER, J. This action involves reciprocal claims for property damage to two colliding automobiles driven by custodians who were not accompanied by the owners. The plaintiff's car was driven by her son, and the defendant's by her sister with whom she lived. The plaintiff sued both the owner and the driver of the other car, and the defendant-owner set up a counterclaim. The court finds that both drivers were negligent.

Each was returning from some mission. The plaintiff's son testified that he had been " at a friend's house." The defendant-operator stated that she drove her sister's car whenever she needed it and that she " had been up to the store." These statements are

somewhat ambiguous, but they are the casual and familiar phrases of laymen, used with reference to ordinary episodes in everyday affairs. As such, their plain and natural import is that each operator was on an errand of his or her own, and they are sufficient to establish that the cars were not being operated on the owner's business, even though, in the absence of such testimony, it would be proper to presume the contrary for all purposes in this case. (*Norris* v. *Kohler*, 41 N. Y. 42; *Ferris* v. *Sterling*, 214 id. 249; *Potts* v. *Pardee*, 220 id. 431; *St. Andrassy* v. *Mooney*, 262 id. 368; *McCann* v. *Davidson*, 145 App. Div. 522.)

However, the testimony does not negative the consent of the owners, and there is nothing to rebut the presumption that each vehicle was being driven with such consent. (*St. Andrassy* v. *Mooney, supra.*) So, the question to be determined is: What are the relative rights and responsibilities of the absentee owners of two colliding automobiles negligently driven by gratuitous bailees?

This is apparently a novel situation for the application of the provision of section 59 of the Vehicle and Traffic Law, that " every owner of a motor vehicle * * * operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle * * *, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner." So far as it applies to a vehicle negligently operated by the custodian in the owner's service, this provision is merely declaratory of the common law which holds the owner liable to third persons and bars him from recovering his own damage. (*Grant* v. *Knepper*, 245 N. Y. 158; *Psota* v. *Long Island R. R. Co.*, 246 id. 388.) But, in abrogating the common-law rule of non-liability where the car is not operated in the owner's service, does the statute destroy both immunities or but one? Is it both a sword and a shield? Does it impale him upon a new liability to third persons but protect him from responsibility for his own damage? Shall each recover from the other or shall both be denied recovery? That is the ultimate question to be determined here.

It has been sought to make the answer depend upon whether the statute created the relation of principal and agent or master and servant between the owner and the bailee. For example, a statement that the borrower " was no longer a stranger to the owner, but became * * * the owner's agent," and that it placed the two " in the same position * * * as that of master and servant " was casually made by the Court of Appeals in passing upon the statutory liability of the owner to third persons. (*Psota* v. *Long Island R. R. Co., supra.*) This has been taken to mean that

the owner is barred from recovering for his own damage by application of the common-law rule that the servant's negligence is imputable to the master. (*Swartout* v. *Van Auken*, 132 Misc. 89; affd. on other grounds, 227 App. Div. 644; *Shuler* v. *Whitmore, Rauber & Vicinus*, 138 Misc. 814; affd., 233 App. Div. 892.)

Later, however, the Court of Appeals, in passing, disapproved the statement in the *Psota* case, in a decision turning upon the fact that the owner was present and in control of the car at the time of the accident. (*Gochee* v. *Wagner*, 257 N. Y. 344.) This denial of the existence of the relationship of master and servant between lender and borrower has, in turn, been assumed, sometimes without discussion, to lead to the conclusion that the owner is not barred from recovery, inasmuch as the common-law basis for imputing negligence is lacking. (*Webber* v. *Graves*, 234 App. Div. 579; *Nannes* v. *Ideal Garage, Inc.*, 150 Misc. 522; and see *Dunlop* v. *Levin*, 243 App. Div. 549, which even takes it for granted that the owner cannot be held liable to a third person.)

That conclusion does not necessarily follow. The statutory liability to third persons depends, not upon common-law relationships or principles, but upon express legislative declaration. May not the same properly be said of the lender's responsibility for his own damage? That the purpose of the statute is to fix upon the owner of a dangerous instrumentality a liability for the negligence of one whom he permits to operate it has been repeatedly stated by the decisions. If like considerations had moved the courts in cases like *Van Blaricom* v. *Dodgson* (220 N. Y. 111) to hold the owner responsible to third persons in the absence of statute, it would not be seriously contended that an owner could recover for his own damage despite the negligence of the borrower. There seems to be no better reason for urging that the Legislature intended such a result or that the express terms of the statute require it.

Some indication of what may depend upon the construction of section 59 is to be found in this case. The plaintiff's damage was established at $100, the defendant-owner's at $25. If the statute bars recovery by an owner whose bailee is negligent, then each owner here must make his own repairs, the cost being to the plaintiff $100, to the defendant-owner $25. But if recovery is not so barred, each is liable to the other, the plaintiff paying $25 and the defendant $100. Further oddities would ensue from a trifling change in facts, such as affirmative proof that, at the moment, the defendant's car, although customarily driven by her sister whenever she needed it, was returning from an errand " to the store " for the owner. Then the defendant-owner would, under the common law, be barred as a master by the negligence of her servant, and, if the

statute imposes no bar upon the plaintiff, she could recover and the defendant could not, the plaintiff expending nothing, and the defendant $125. In the reverse situation the plaintiff's outlay would be $125 and the defendant's nothing.

Such considerations are but illustrative of what may be entailed in an unending procession of cases involving slight variations of fact, and how, if the statute imposes no bar, trifles, incidents, fictions and technicalities will assume controlling importance over principles. While difficulties in application and necessity for limitations do not necessarily militate against a rule, they may be important in determining whether the rule serves the purpose of enhancing certainty and promoting uniformity.

The common law is consistent. When the servant is negligent, the master is liable and responsible for resulting damage, whether suffered by another or by himself; he cannot avoid the one or recover the other. Conversely, a party is neither held responsible nor barred at common law by reason of the negligence of a volunteer acting without his consent. Between these two extremes falls the bailee of a vehicle who operates it with the owner's consent but not in his service. In this situation the common law applies the latter rule, holding that the bailee's negligence does not render the owner liable for damages resulting to a third person, and does not preclude him from recovering his own. To change this, section 59 was enacted in general and comprehensive terms imposing liability and responsibility " for injuries to person or property " resulting from the negligence of the borrower. Its purpose was to change a rule which granted complete immunity — a rule under which an owner was neither liable to a third person, nor barred from recovery, by reason of the negligence of the gratuitous bailee. The change is effected by the two words " or otherwise " appended to the phrase " in the business of such owner," which is but a reference to the common law. The Legislature, for some reason, chose to declare that the owner shall be " liable and responsible." And this liability and responsibility is not, either expressly or by necessary implication, confined to injuries suffered by third persons; it extends generally to injuries resulting from the negligence of the operator. The provision seems tantamount to a declaration that the rules governing the liability and the right of recovery of the owner of a motor vehicle negligently operated with his consent, but not in his business, shall hereafter be the same as those heretofore applied to its operation in his business and with his consent. In other words, the statute substituted liability of the owner and a bar against his own recovery for the rule that saved him from the one and allowed him the other.

As has been stated, the statute was designed to charge the owner of a dangerous instrumentality with responsibility for the negligence of one to whom he intrusts its operation, thus virtually making him an insurer of the qualifications of an operator of his own choosing, regardless of how the relationship between the two is to be characterized or whether it be characterized at all. This should apply as well to his right of recovery as to his liability to others. Neither the menace of the vehicle nor the prudence, skill or experience of the driver becomes either greater or less because damage is claimed by one person or another, whether it be the owner or a stranger.

From what has been said it follows that the owner is barred by the negligence of his gratuitous bailee — that he shall not be permitted to capitalize a situation identical with that for which he is expressly made responsible, and, in the phrase of Judge TOMPKINS of this court, that the Legislature has not generated and the courts will not sponsor, a hybrid offspring. (*Tantalo* v. *Damico*, decided June 27, 1934.)

The complaint is dismissed as to both defendants and the counterclaim is dismissed.