Daniel G. Albert, J.
This is an action for a declaratory judgment by the plaintiff, a domestic insurance corporation, wherein -it seeks that the court declare the -following:
(1) “ That -the defendant ronald p. babbis was not a resident or a member of the household of the instant plaintiff’s named insured -chables f. mibsemeb on or about "February 18, 1961.
(2) ■“ That the defendant ronald p. babbis was operating the vehicle of this plaintiff’s insured, chables f. miesem-eb, on or About February 18,. 1-961, without the permission of the said CHARLES F. MIBSEMEB.
(3) “ That the defendant ronald p. babbis was and is not a 1 Person Insured ’ under the Terms and Provisions of the said contract and policy of Insurance of the said chables f. mibsemeb on or -about February 18, 1-961.
(4) “ That the Insurance policy and its protection, as afforded to the said chables f. miesemer, did not and does not -extend and/or apply to or in favor of -the said ronald p, babbis.
(5) “ That defendant ronald p. babbis is not entitled to be indemnified by the plaintiff herein m the event a Judgment is rendered and/or recovered against him in connection with the above described accident.”
The evidence elicited during the trial of this action at a ’Special Term -of this court, indicated that .Charles F. Miesemer, the father of the -defendant, Jane H. Miesemer, owned tw-o automobiles "in February, 1961, and that both were covered by an *883 automobile liability insurance contract issued by the plaintiff herein. He drove one automobile himself, but the other, which was involved in an accident, had originally been purchased for the use of his wife, who never used this second car except for a short period of time when she was in possession of a learner’s permit. Since Mrs. Miesemer did not subsequently obtain an operator’s license, the daughter Jane, one of the defendants herein, then 19 years of age, was given complete and unlimited use of this second ear. She lived at home with her parents and was employed elsewhere. She was given possession of the registration of the car and of its keys and used the car in traveling to and from her place of employment and for any other purpose she desired. It was conceded at the trial that Jane’s parents told her not to let anyone else use the car, but not mentioning the defendant Barbis, by name.
It seems that on February 18,1961, while Mr. and Mrs. Charles Miesemer were vacationing in Florida, and their daughter Jane (a defendant herein), was staying with an aunt in Valley Stream, she and her niece drove from Valley Stream to the Miesemer home to pick up the mail, and then after starting towards Valley Stream, intending to drop some papers at a Valley Stream real estate office, and while on their way, stopped at the home of defendant Ronald P. Barbis. Although Jane has since married another young man, J one and Ronald Barbis were then ‘ ‘ steady dates ”. Jane and Ronald had been out in cars on many occasions, sometimes using Ronald’s car and sometimes Jane’s and the testimony indicated that when they were together the defendant, Barbis, always drove the ear. During this visit Barbis expressed the desire to have a prescription filled in a Valley Stream drugstore and thereupon they proceeded to drive away together, with Ronald driving the car, Jane in the front seat alongside of him and Jane’s niece in the rear seat. While traveling toward Valley Stream an accident occurred and defendant, J one Niesemer, was injured. An action was brought by her guardian ad litem against Barbis to recover damages for her injuries, and is pending. Barbis is being defended in that action by the plaintiff insurance company in this action. Sometime after the accident and while still appearing in defense of the action against Barbis, this plaintiff brought this action for a judgment seeking to declare that Barbis was not an insured under the automobile liability policy issued by this plaintiff to Charles Miesemer.
The plaintiff insurer contends in this action that Barbis was not an insured under its policy.
*884 The relevant provisions of the policy of insurance in issue here read as follows:
1 ‘ Persons Insured: The following are insureds under Part 1:
“ (a) With respect to the owned automobile, (1) the named insured and any resident of the same household, (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;
“(b) With respect to a non-owned automobile, (1) the named insured, (2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner;
“ (c) Any other person or organization legally responsible for the use of (1) an owned automobile, or (2) a non-owned automobile, if such automobile is not owned or hired by such person or organization, provided the actual use thereof is by a person who is an insured under (a) or (b) above with respect to such owned automobile or non-owned automobile.
“ The insurance afforded under Part 1 applies separately to each insured against whom claim is made or suit is brought, but the inclusion herein of more than one insured shall not operate to increase the limits of the company’s liability.”
The plaintiff urges its contention of noncoverage on Barbis’ alleged failure to come within the terms of subdivision (a) (quoted supra). It contends that Barbis was not a resident of the household of the named insured and that he was not using the automobile in question with the permission of the named insured. It is true that Barbis was not a resident of the household of the named insured, hence the question arises as to whether or not Barbis was using the automobile with the permission of the named insured. In this respect we must refer also to subdivision (c) of Part 1 of plaintiff’s policy which reads as follows :
“Persons Insured: The following are insureds under Part 1: * * *
“(c) Any other person * * * legally responsible for the use of (1) an owned automobile * * * provided the actual use thereof is by a person who is an insured under (a) * * * above with respect to such owned automobile ”.
This court must determine from the foregoing provisions of the plaintiff’s policy of insurance, whether Barbis was “ legally responsible for the use of the owned automobile.” As a resident of the household of the named insured, Jane was an insured under (a). Concededly, she had her parents’ permission to use *885 the automobile, although under (a) (supra), she did not require permission as a member of the household. Carrying this to the extreme, Jane would have been covered by this insurance policy under (a) even if she had stolen the car, and whether or not she may have violated her parents’ instructions by allowing Barbis to drive the car would be completely irrelevant.
It is pertinent at this point to consider the facts relating to the operation and use of the automobile in question, for eoncededly this is the automobile covered by plaintiff’s policy. Was it an extraordinary or unusual operation or use, entirely uncontemplated by the insurer or the insured, to which this automobile was being subjected? Quite to the contrary, this court concludes that Jane Miesemer, concededly a resident of the same household as the insured, was actually using the automobile, together with Barbis who was driving it and also using it. Jane had an errand to perform in picking up the mail and in continuing on to a real estate office in Valley Stream, and then to return to her aunt’s home to which she was also returning her niece who was out with her. Barbis, whom Jane had been “ dating” over a period of months, was also performing an errand on his own in going to a drugstore, and being the man among the three persons in the car, it was logical to assume that he would operate the car while he and Jane were both using it although he was driving it.
In a somewhat similar situation, the Court of Appeals has said that the “ passenger ” is using the automobile. In the ease of Arcara v. Moresse (258 N. Y. 211) the owner of a car loaned it to his nephew (Maggio) for the nephew’s use and he instructed the latter not to let a person by the name of Barone or anyone else drive the car. Maggio did, however, permit Barone to operate the car while Maggio was a passenger therein, and there was an accident. There the court in concluding that Maggio was actually using the car, although only a passenger therein, stated (pp. 213-214): “ We think that Maggio was at the time ‘ using ’ the car, though Barone was driving * * * We think; also, that Maggio, was at the time using the car with ‘ the permission ’ of the defendant owner * * * [1] if the limiting instructions relate to the manner of operation, such as the speeding or careless pilotage of the car, though the instructions be disobeyed, nevertheless the use is with ‘ permission ’ of the owner. Maggio was not instructed that Barone should not be accepted as a guest; he was merely told that Barone must not drive. The thing forbidden related to the operation of the car, not to the use which might be made of it. We conclude that Maggio was ‘ using ’ the car with the ‘ permission ’ of the owner. ’ ’
*886 In another situation bearing on this same issue, Judge Cabdozo stated in the case of Grant v. Knepper (245 N. Y. 158, 165): “ Carucci did not abandon the car or its use when he surrendered to another the guidance of the wheel. He was still in charge of the truck * * * He did not cease to use it, and used it with permission, though the method of operation may have been illegal or forbidden * * * Carucci was delinquent, but he was still the director of the enterprise, still the custodian of the instrumentality confided to his keeping, still the master of the ship.”
Although there are many cases in the various jurisdictions dealing with interpretations of varying forms of automobile liability insurance, we are concerned only with the interpretation of the coverage to be afforded under the policy in question ; namely, Standard New York Family Combination Automobile Policy Form, 1958.
Strange though it may seem, with millions of motor vehicles using our highways constantly and with many thousands of accidents occurring, and with many thousands of negligence cases tried by our courts annually, there is still a dearth of case authority on the identical questions raised in this proceeding.
Although the Arcara case (supra), and other decisions of our courts may have formed the background for decisional authorities in other States, we must necessarily turn to other jurisdictions to find cases more appropriately identical to the facts and issues involved in the case before us.
In our neighboring State of New Jersey, in the ease of Allstate Ins. Co. v. Fidelity & Cas. Co. of N. Y. (73 N. J. .Super. 407) the Superior Court of that State, having before it an insurance contract provision identical with that contained in the plaintiff’s policy herein, stated (p. 419): “ there can be no doubt that had an accident occurred in the course of the planned purposes of the evening while [the friend] was at the wheel, the driver would have been covered since in such circumstances the use to which the car was being put would have accorded with the permission granted notwithstanding that it was operated in contravention of the named insured’s specific instructions. But it does not follow that simply because the precise use of the car at the moment of the accident did not serve the particular purposes for which the vehicle was borrowed, the driver of the vehicle at such time is disentitled to the coverage he might otherwise have.”
Of the same tenor, the Supreme Court of North Dakota, also undertaking to interpret a similar insurance provision, in the case of Persellin v. State Auto. Ins. Assn. (75 N. D. 716, 720) stated: ‘( Although a limitation that the operation of a car, as *887 well as its use, must be with the permission of the named insured is a common provision of 1 omnibus clauses ’ (see note 72 A. L. It. 1375), the clause contained in the policy in this case contains no such limitation. The only condition here is that the use of the ear must be with the permission of the named insured. If that condition is met, then the user of the car and any person legally responsible for its use are additional insured persons and entitled to the protection of the policy. ’ ’
It is significant to note at this point that although the plaintiff relies on the fact that the insured, Charles Miesemer, did not permit Barbis to drive or to operate the automobile, that nevertheless subdivision (a) of plaintiff’s policy is silent on driving or operating. Hence, if Barbis was “using” the insured’s automobile, and use thereof was with the permission of the insured through a member of his household, this would make Barbis an insured under this clause of the policy. Under all the circumstances, it would seem rather farfetched to contend that the use to which the insured automobile was being put at the time of the accident was not an actual use by Jane Miesemer or that it was not a permitted use, conceding arguendo that Jane may have disobeyed her father by allowing Barbis to operate the car.
When the Hew York Legislature enacted the Compulsory Automobile Liability Insurance Law it established a public policy for all the world to know that it would require, in the public interest, insurance liability coverage for all automobiles owned in this State and legally licensed to use our highways. Both public policy and legal precedent require that if any doubt of liability coverage exists, and in this instance I do not believe that such a doubt does exist, it nevertheless must be resolved in favor of extension of coverage rather than the denial thereof. To hold otherwise would make a farce of the very statute promulgated in the interests of the welfare and protection of our citizens by the Legislature. It was clearly the intent of the lawmakers to require automobile liability insurance coverage for every owner of a motor vehicle in this State. When a stolen automobile operated by a thief causes an injury to person or property, it is unfortunate that the person injured may not recover from the owner thereof. Certainly, this is not the case in this instance, nor does the court feel justified in holding that the defendant Barbis under all the circumstances is in no better position than if he had stolen the automobile without the knowledge of the named insured or any member of the household.
Indeed, the Supreme Court of the State of Massachusetts, In commenting on a similar situation in the ease of Guzenfield v. *888 Liberty Mut. Ins. Co. (286 Mass. 133, 135-136) stated: “ The policy here in question was issued to meet the requirements of our statute of compulsory motor vehicle insurance. It is to be construed in connection with that statute and the public policy embodied therein. * * * The full benefit of the compulsory security and of the provision precluding avoidance by default of the owner will be lost, if violations of rules of conduct laid down by an owner to be observed by such as he permits to use his motor vehicle upon our ways are held to defeat an injured person’s enforcement of the policy by destroying the owner’s consent to the use.”
This court concludes that the evidence in this case, legal precedent and public policy compel a finding here in favor of the defendants holding as follows:
(1) That the defendant, Ronald P. Barbis, was not a resident or a member of the household of the infant plaintiff’s named insured, Charles P. Miesemer, on or about February 18, 1961.
(2) That the defendant, Ronald P. Barbis, was and is a “ Person Insured ” under the terms and provisions of the said contract and policy of insurance of the said Charles F. Miesemer on or about February 18, 1961.
(3) That the insurance policy and its protection, as afforded to the said Charles F. Miesemer, did and does extend and/or apply to or in favor of the said Ronald P. Barbis.
(4) That the defendant, Ronald P. Barbis, is entitled to be indemnified by the plaintiff herein in the event a judgment is rendered and/or recovered against him in connection with the above-described accident.
That judgment will be entered in accordance with the foregoing decision of this court.
That this decision complies with 4213 Civil Practice Law and Rules.