JORGE MCGEE QUIÑONES, Plaintiff and Appellant, v. DR. ARNALDO PALMER, Defendant and Appellee.

No. R-64-52. Decided November 25, 1964.

*Amancio Arias Cestero* and *Celestino M. Iriarte* for appellant.
 *Rivera Zayas, Rivera Cestero & Rúa* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

After making a relation of the different stages marked by the rules of liability for the use and operation of motor vehicles, and upon considering the last enactment

of the Legislature on this particular—§ 13-101 of the Vehicle and Traffic Law, 9 L.P.R.A. § 1751[1]—giving special attention to the history during the process of its approval, we held in *Cordero Santiago* v. *Lizardi Caballero*, 89 P.R.R. 148 (1963) that (1) after its effectiveness the controlling basic fact of liability is that the possession has been obtained by the express or implied authorization of the owner; (2) the owner of the vehicle could not enervate his legal liability in the event that whoever obtained the possession in the aforestated manner, violated the limitations imposed on the manner, time, place, and purposes of the authorization; (3) the construction and application of the rule should respond to the primary purpose of protecting the injured innocent parties.[2]

It is necessary to examine the findings of fact of the trial court which are pertinent in determining whether the doctrine stated was correctly applied:

"1—On December 4, 1960, Dr. Arnaldo Palmer was the owner of a 1960 Renault, license plate No. 717-726. On the date of the accident the Western Assurance Co., an insurance company duly authorized to do business in Puerto Rico, had issued the corre-

---

[1] "The owner of a motor vehicle shall be liable for damages and losses caused through guilt or negligence by operation of such vehicle when operated by or in the possession or under the control of any person who, for the main purpose of operating it, or of having or allowing it to be operated by a third person, obtains possession thereof by express or tacit authorization of its owner. In any event it shall be assumed, unless otherwise proved, that any person operating or having in his possession or under his control a motor vehicle has obtained possession thereof with the authorization of its owner for the main purpose of operating it or having or allowing it to be operated by a third person.

"The person for whose negligence the owner of a vehicle is to answer under the provisions of the preceding paragraph shall be bound to indemnify said owner."

[2] The report of the House Judiciary Committee in relation to House Bill No. 842, XIII *Diario de Sesiones* 1312–1313 (1960), is clear in this matter.

It says: "The due protection to the community requires that the primary liability for the use of the vehicle be imposed upon the owner."

sponding insurance policy covering the civil liability in which Dr. Palmer might incur as the result of the use and enjoyment of the aforedescribed car.[3]

"2—On the day of the accident, which was a Sunday, Dr. Palmer took his automobile to González' tinsmith shop, and there he delivered it to the latter's son, Manuel González, to be washed, lubricated, and for any necessary minor mechanical repair. Manuel González was instructed by Dr. Palmer to deliver the automobile to his residence once he had finished the job.

"3—In violation of the specific orders received, González used the automobile entrusted to him for his own benefit. About 9:00 a.m. and together with other youths surnamed Osorio, Ortiz, and Herrera, González went for plaintiff to the place where he was working as assistant-janitor in Paramount Theatre. They helped plaintiff finish his work and then all of them went on an excursion which plaintiff himself called an artistic tour. They visited Luquillo Beach, they went to El Yunque, and went on to Naguabo and went swimming at Naguabo Beach. On the way back they put the top of the car down and drove it at high speed; they came across a bus traveling in the opposite direction at excessive speed. When the driver of the Renault who at that time was Manuel Osorio Orozco swerved, and due to the speed and the turn he gave to the steering wheel when he used the brakes, he caused the car to zig-zag and to turn over, whereupon plaintiff suffered the injuries and bruises described hereinafter. This accident occurred within the municipality of Juncos.

"4—. . . . . . .

"5—The person who was driving the automobile at the time of the accident, Manuel Osorio, has never been defendant's employee, and the latter has never lent him his automobile, and at the time of the accident he was not performing any action for the benefit of Dr. Palmer."

The court decided that it was inferred from the above-copied findings that neither the person driving the vehicle

---

[3] [This fact was not proved. We presume the trial court derives its knowledge from the answer to a cross-examination to which defendant was submitted, which was not offered in evidence.]

at the time of the accident nor the one to whom it had been entrusted for certain purposes had acquired possession of the automobile by any express or implied authorization of the owner. It dismissed the complaint.[4] In deciding a motion for reconsideration on February 11, 1964, it ratified its view stating that González had received the automobile from defendant for a specific purpose, and in violation of the express instructions he had received, he used it for other purposes, which conduct was equivalent to larceny of use.[5]

It erred.

 As we have said, once the possession is obtained by express or implied authorization of the owner, the latter cannot elude his civil liability by evidence in relation to the limitations on the use or operation of the automobile. Such fact may give rise to a claim of the owner against the person for whose negligence he is bound to answer, but it is inoperative as to third parties. The determining factor is the authorized *possession*, not the authorized *use*. In the present case it is evident that González obtained possession of the vehicle by defendant's authorization. For that reason, it is likewise specious to try to assimilate this situation to the offense of larceny of use, since, evidently, Osorio was driving the car authorized by the person who "duly" represented the owner. But there is still more. It appears from the evidence that González, to whom the vehicle was entrusted, had only a learner's permit, a fact known to defend-

---

[4] On the date on which the judgment was rendered the opinion in *Cordero Santiago v. Lizardi Caballero*, 89 P.R.R. 148, had not yet been rendered.

[5] The offense of larceny of use is defined in § 444a of the Penal Code, 33 L.P.R.A. § 1700, as follows:

"Any person who shall, without the permission of the owner, or the person legally or duly representing him, wilfully take any automobile . . . for the purpose of temporarily using the same, shall be guilty of a misdemeanor."

ant.[6] It may be inferred that Dr. Palmer anticipated that due to this fact González had to be accompanied by a duly authorized driver[7] or that the automobile would be driven by a duly authorized driver. Cf. The Conjugal Partnership, Etc. v. Cruz, 78 P.R.R. 335 (1955); Usera v. González, 74 P.R.R. 454 (1953). Hence there is no significance to the fact as contended that the vehicle was driven by a third person, since the provision of § 13-101, supra, which refers to "having or allowing it to be operated by a third person would be applicable."

But even if said provision were not applicable, considering the purpose of the law of protecting third persons, we would always maintain that said fact is irrelevant, and that the fact that a vehicle is driven by a third person with the authorization of the person to whom the vehicle was entrusted is equivalent to the possession by authorization of the latter. An identical decision was reached in the construction of a statute which imposed liability, not for the possession, but for the use of the vehicle, in the well known case of Grant v. Knepper, 156 N.E. 650 (N.Y. 1927), opinion of Judge Cardozo in the Court of Appeals of New York, in which it was stated at p. 652: "Carucci [the duly authorized driver] did not abandon the car or its use when he surrendered to another the guidance of the

---

[6] On two occasions during his testimony, defendant said that "When I delivered it to him, a friend of his accompanied him to my house to bring it back, or I went for it personally." (Tr. Ev. 6), and ". . . other times he brought it accompanied by an authorized person." (Tr. Ev. 10.)

[7] Section 3-105(d) of the Vehicle and Traffic Law, 9 L.P.R.A. § 655(d) reads as follows:

"Any person who has been granted a learner's permit may operate a motor vehicle on the public highways subject to the regulations which the Secretary may prescribe for the purpose and shall be obliged to have seated immediately next to him, when the characteristics of the vehicle so permit, a person duly authorized to operate such type of vehicle. The person sitting next to the learner shall furthermore be in such physical and mental condition as to enable him to act or instruct such learner and take over the vehicle, if necessary."

wheel. He was still in charge of the truck, and was using it with the permission of the master, and even in the master's business. He did not cease to use it, and used it with permission, though the method of operation may have been illegal or forbidden." And further he adds: "The owner is . . . liable . . . if the act of negligence occurs during the life of the permitted use."

■ Any other decision would conflict with the purpose sought by said special provisions in statutes concerning the liability of the owner of a vehicle who surrenders the possession or authorizes the use thereof, which is none other than to transfer the burden of the damages to the party who is in a better position to bear it. The owner of the automobile must suffer the risks, not the innocent victim. A slight examination of the question will show that the owner's position is not as burdensome as it appears to be. He might choose not to lend or deliver his vehicle to another person or have his liability covered by sufficient insurance. See, *The Owner Consent Statutes: The Distinctions Between Enterprise and Instrumentality Liability*, 31 U. Chi. L. Rev. 355–364 (1964).

■ ■ There remains to explain that the circumstances under which possession in the present case was granted indicate that the operation of the vehicle was an essential, and not merely incidental, part of the delivery since defendant did not limit himself to taking the car to the shop of González' father to be washed and lubricated, but it was understood that once the work was done the car would be returned to his home. In other words, the authorization granted required González, at some time, to operate the vehicle in the public thoroughfare. Precisely, it is the risk to which the citizens are exposed on the public thoroughfare which the statute tends to protect.

The judgment rendered by the Superior Court, San Juan Part, on September 18, 1963 will be reversed, and defend-

457

ant will be ordered to pay $3,740 to plaintiff as indemnity,[8] plus costs including those for the present review, excluding attorney's fees.[9]

Mr. Chief Justice Negrón Fernández dissented.

---

[8] The court determined that "As a result of the accident plaintiff suffered a severe blow on the left side of the face which caused fracture of the maxillary underneath the left eye. Said fracture is well healed, but it has left a small deformity, although no functional defects exists. In addition, plaintiff suffered secondary wounds on the forearm and presented a major scar on the left shoulder which has not caused any disability whatsoever. As a consequence of the accident and because he was absent from work he lost his job. At that time he had a weekly salary of $20 and he lost his job because he did not feel physically fit to do it for three months."

We allow $3,500 for the injuries suffered and $240 for the economic benefits not received.

[9] The complaint was filed under the agency theory, and, therefore, defendant was not rash in opposing it, since the evidence shows that the master and servant relationship between defendant and the person who was driving the vehicle at the time of the accident did not exist.